55 CCPA

**AMERICAN MANUFACTURING COMPANY OF TEXAS, Appellant,**

v.

**The HEALD MACHINE COMPANY, Appellee.**

**Patent Appeal No. 7807.**

United States Court of Customs and Patent Appeals.

Nov. 9, 1967.

Rich and Smith, JJ., dissented.

Herbert J. Brown, Fort Worth, Tex. (Munson H. Lane, Washington, D. C., of counsel), for appellant.

Norman S. Blodgett, Westboro, Mass., for appellee.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

American Manufacturing Company of Texas appeals from the decision of the Trademark Trial and Appeal Board [1] sustaining the opposition of The Heald Machine Company to an application for registration of the mark "BORMAS-TER" for cross slide assemblies for metal working lathes. Appellant asserts continuous use since May 13, 1963. Registration is sought in class 23 which relates to cutlery, machinery and tools, and parts thereof.

Appellee is the registrant of "BORE-MATIC" for machines for the precision finishing of holes or bores in parts of metal, fiber and like materials (Reg. No. 292,921, issued March 29, 1932; renewed), also in class 23.

Both parties rely on affidavits accompanied by exhibits.

The record discloses that appellee is a large manufacturer of machine tools. Long prior to appellant's date of first use, appellee has used BORE-MATIC on many types of boring machines, one of which possesses characteristics the same as those of a lathe. In addition to the above products, appellee manufactures hydraulic cross slides and manual cross slides which serve as attachments for its BORE-MATIC machines. During the period since 1931, appellee has expended $2,000,000 in advertising its BORE-MATIC machines with sales amounting to $62,000,000.

Appellant's proof, in material substance, is to the effect that it uses the registered mark SPEEDMASTER for spindle assembles for machine tools [2] and BORMASTER for cross slide assemblies for metal working lathes. The spindle and cross slide assemblies are accessories for use on lathes which are sold under the mark AMCOT. The AMCOT lathes sell for approximately $50,000, and the BORMASTER cross slide assemblies sell for approximately $5,500.

Priority of registration and use clearly reside with appellee. It is abundantly clear that the involved products are closely related and normally move through the same channels of trade to the same class of purchasers.

Appellant contends that, inasmuch as the only feature which the marks possess in common is the prefix "Bor" or "Bore," which is in the public domain and possesses little trademark significance and, further, that the goods of the parties are expensive and sold only to a prudent and discriminating class of purchasers, confusion is not likely to occur in the market place.

In sustaining the opposition, the board reasoned as follows:

> While the prefix "BOR" or "BORE" may be publici juris as applied to boring machines, we must still consider the marks of the parties in their entireties and, when so considered, we conclude that applicant's "BORMAS-TER" so resembles "BORE-MATIC"

---

\* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. 147 USPQ 533.

2. Reg. No. 769,491, issued May 12, 1964.

that, as applied to applicant's goods, there would be a likelihood of confusion or mistake. In so doing, we have given due consideration to applicant's argument that these products are sold to discriminating purchasers but do not believe that where, as here, the products of the parties are substantially the same, such factor is of controlling significance. See: In re Dobeckmun Company [286 F.2d 187, 48 CCPA 810] (1961). While there may be some elements of doubt as to whether confusion would be likely because of the highly suggestive nature of the marks of the parties, we follow the established practice of resolving any such doubts in favor of the first user. [Citations omitted.]

We have considered the cases cited and relied on by appellant and the arguments advanced. We are persuaded, however, that the rationale employed by the court in the *Dobeckmun* case, 286 F.2d 187, 48 CCPA 810, is pertinent here and was correctly applied by the board.

Here, as in *Dobeckmun*, we have closely related goods. The court stated:

The owner of the prior registered mark has the right to use his mark on such closely related goods.

Similarity of the products of appellant and of registrant is of greater legal significance in applying Section 2 (d) than are the possible semantic differences * * *. Section 2(d) requires us to determine not whether the goods are identical but only whether applicant's mark so resembles the prior mark as to be likely when applied to its goods to cause confusion, or mistake, or to deceive purchasers.

Even though we are dealing here with expensive goods which are purchased by discriminating and sophisticated purchasers, the marks and the goods on which they are used are sufficiently close as to raise the question of likelihood of confusion. While we agree with the Trademark Trial and Appeal Board that there may be some elements of doubt as to whether confusion would be likely in this particular situation, such doubts must be resolved in favor of the first user.

Perceiving no reversible error in the decision of the board, we affirm.

Affirmed.

RICH, Judge (dissenting).

In substance, all the majority opinion says by way of explaining why it affirms is that it agrees with the reasoning of the board.[1] I cannot find in the board's opinion any rationalization of *why* it thought confusion would be likely. The opinion merely recites some of the stipulated facts [2] and then states the conclusion that confusion is likely. No doubt the board based its conclusion on the obvious similarities of the marks *as a whole* and its holding that the goods are "substantially the same." It then cited In re Dobeckmun Co., 286 F.2d 187, 48 CCPA 810, which I consider no precedent for the result reached, even if we consider the goods to be *identical* in the sense of all being machine tools. Within that category, the goods are actually quite different. The true state of mind of the board seems to have been that it was in *doubt* about likelihood of confusion, out of which state it delivered itself by applying the old rule to resolve doubt in favor of the first user.

I believe that confusion is not likely and have no doubt to be resolved. The reasons for my conviction follow.

First, insufficient weight has been given to the facts as to the actual goods sold under the respective marks, to whom they are sold, the purposes for which they are bought, and the prices involved.

1. The board opinion is published at 147 USPQ 533.

2. It was stipulated by the parties that the testimony could be introduced in the form of affidavits. Each side then submitted the affidavit of a vice-president reciting facts about his own company's business. There are no conflicts between the two affidavits. This is tantamount to stipulating facts.

Appellant's cross-slide assemblies cost $5,500 or so—as much as a luxury automobile—and are designed expressly for use with appellant's $50,000 lathes. The record shows that they will not fit any other machine tool. Therefore, what is involved in the purchase of one of these BORMASTER cross-slide assemblies is ownership of a $50,000 tool and purchase of a $5,500 attachment for it. Such a purchase is not a casual transaction and unquestionably involves engineering specification of exactly what is wanted and of a specific known source, from which alone it can be had, and knowledgeable corporate purchasing-agent handling of the whole transaction. Appellee's affidavit states as to purchasers:

> In every case, the sales are made to manufacturers who make use of machine tools and use them for manufacturing a finished product. These customers would be the same customers who would purchase lathe cross-slide assemblies and similar machine products.

These are thus capital goods involving large capital outlays, not consumer goods.

Opposer's position, accepted below and by the majority, is that because it sells BORE-MATIC boring machines, the aforesaid purchasers are going to be confused as to the source of the $5,500 BOR-MASTER cross-slide attachments and think they come from the opposer. I cannot see the slightest possibility of such confusion for the following reasons:

1. The extreme care that goes into the purchase of a $5,500 attachment for a $50,000 machine with an attendant *certainty* of the source from which it is purchased.

2. The obvious differences in the marks: (a) the wholly different mental impressions generated by "MASTER" vs. "MATIC", both used ad nauseam in trademarks; (b) the different spellings of "BORE" and "BOR"; (c) the hyphenation vs. the non-hyphenation; and the very significant fact that the word "bore," however spelled, is descriptive of the goods of both parties, indicating that

they are machines or accessories for accomplishing boring operations in a factory, for which reason that portion of the marks would not be taken by anyone as an indication of origin.

3. The fact, not mentioned by the majority, that opposer-appellee appears to emphasize "MATIC" in its business by using at least a small family of marks including, in addition to BORE-MATIC, CENTRI-MATIC, GAGE-MATIC, and SIZE-MATIC. Why, then, should anyone take a "MASTER" mark as indicating origin in appellee? Because "BOR" is in the mark? Certainly not! I note again that this is a hyphenated family and that appellant's mark is non-hyphenated.

4. If the $2,000,000 of advertising and $62,000,000 of sales by appellee have any significance in this case it is, in my opinion, that the purchasers, actual and potential, of appellee's machines must by now be quite familiar with the BORE-MATIC trademark so that they would be even less likely to think BORMASTER has any connection with appellee than if the sales and promotion had been smaller.

The *Dobeckmun* case is no real support for the board's decision—or the majority's—when its facts are considered. The marks there involved were DURAFILM, sought to be registered for packaging films, and the cited prior registration of DUROFOIL for foil laminated to paper or to transparent film for wrapping purposes. We felt that purchasers of the films and foils—who were industrial packagers—might well think DURA-FILM and DUROFOIL were products "of a single producer," trademarks on "companion products" of film and foil. I see no such possibility on the facts of the present case. The "rationale" we applied in *Dobeckmun* cannot be applied here.

The test we have to apply here is a statutory test as prescribed in section 2 (d) of the Lanham Act (15 U.S.C. § 1052 (d)). It is not enough that there are resemblances between the marks and similarities between, or even identity of,

goods and priority in the opposer. The test of the statute is that applicant's mark

> * * * *so* resembles a mark registered in the Patent Office or a mark * * * previously used in the United States by another and not abandoned, *as* to be likely, *when applied to the goods of the applicant,* to cause confusion, or to cause mistake, or to deceive: * * *. [My emphasis.]

We are thereby required to consider realistically *all* of the circumstances pertaining to the use of the applicant's mark on the applicant's goods vis à vis the opposer's marks and uses. I do not believe the board did so. In fact, its opinion indicates that it put aside one of the principal circumstances; the board said:

> In so doing [concluding confusion was likely], we have given due consideration to applicant's argument that these products are sold to discriminating purchasers *but do not believe that where, as here, the products of the parties are substantially the same, such factor is of controlling significance.* [My emphasis.]

It cited the *Dobeckmun* case for that proposition but that case does not support such a broad statement; all we did there was to decide that on *all* the circumstances there before us confusion was likely. The circumstances here are quite different. Even if the goods are identical, it remains necessary to consider all the other circumstances and they may be of controlling significance.

The majority opinion adds nothing new. It gives blanket approval to what the board said and the board's application of the *Dobeckmun* case. I think both were in error. Like the board, the majority appears to have ended up in doubt.

Since I conclude on all the circumstances of record surrounding the sale of the respective goods under the marks involved that there is no room for doubt, I would reverse.

SMITH, Judge (dissenting).

While I agree with Judge Rich that this case should be reversed, I arrive at this conclusion for somewhat different reasons than are stated in his dissenting opinion. I agree with him that In re Dobeckmun Co., 286 F.2d 187, 48 CCPA 810 (1960), is not properly applicable here, "when its facts are considered." In *Dobeckmun*, this court pointed out that even a discriminating purchaser might well assume that the marks there in issue were trademarks on *companion products* of a *single* producer. Id. 286 F.2d at 188, 48 CCPA at 813. On the facts before us here, I believe, as Judge Rich has indicated, that the "discriminating purchaser" argument has merit. I do not think, however, that the "rationale" of *Dobeckmun*, and the approach there taken in the analysis of trademark problems of the present type should be ignored even though other factors may well dictate the ultimate decision.

As a result of dissecting the competing marks to find their similarities and their differences, as I agree must be done, the only similarities of the marks reside in a common non-distinctive prefix. The prefix "BOR" or "BORE," it seems to me, is somewhat descriptive of the respective apparatuses to which the marks are applied. In the absence of evidence to the contrary, these common portions of the marks under review must be considered to indicate the nature of the goods rather than the source of the goods. Section 2(d) of The Trademark Act of 1946 proscribes registration of a mark when, as applied to applicant's goods, it is likely to cause confusion, mistake or to deceive. It is the likelihood of confusion, mistake or deception of purchasers as to the source of the goods on which applicant's mark is used that forms the basis for the fundamental inquiry here.

The differences in the marks are found primarily in the respective suffixes, "MASTER" as used by the applicant and "-MATIC" as used by the opposer.

As I compare the entire marks here in issue, keeping in mind the similarities and differences noted by dissection of the marks, it is my opinion that they differ so in sound, meaning and appearance that I believe there would be no likelihood of confusion, mistake or deception of discriminating purchasers as to the source of the goods arising by reason of the concurrent use of the marks on the goods of the respective parties.

It is only when all of the facts of record, properly weighed and carefully considered, do not prove conclusive of one result or another that we should resolve the doubt in favor of the first user. As a *mechanism of policy*, this practice should be resorted to only when the record provides a reasonable basis for the existence of such a doubt. I do not believe that this is a case which requires application of this policy since the conclusion seems to be quite clear.

I would, therefore, reverse the decision below.