COMMUNICATIONS SATELLITE
CORP., Appellant,

v.

COMCET, INC., Appellee.

No. 13822.

United States Court of Appeals,
Fourth Circuit.

Argued April 7, 1970.

Decided July 14, 1970.

Francis C. Browne, Washington, D.C. (Richard G. Kline, Washington, D.C., Russell R. Reno, Jr., and Venable, Baetjer & Howard, Baltimore, Md., David C. Acheson, William H. Berman, Washington, D.C., J. Frank Osha, and Browne, Beveridge & Degrandi, Washington, D.C. on brief), for appellant.

Joe A. Sutherland, Chicago, Ill. (James G. Reynolds, Baltimore, Md., William L. Morrison, Chicago, Ill., Michael P. Crocker and Piper & Marbury, Baltimore, Md., and Gardner, Carton, Douglas, Chilgren & Waud, Chicago, Ill., on brief), for appellee.

Before BRYAN, CRAVEN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Communications Satellite Corporation (Comsat), claiming trade name infringement, trademark infringement, and deceptive trade practices, brought this action against Comcet, Inc., to enjoin it from using Comcet as a trade name and trademark.[1] The district judge found that Comsat's services and Comcet's products are dissimilar and noncompetitive; that expansion leading to future competition is improbable; that the parties' customers are highly sophisticated and knowledgeable; and that "there is virtually no likelihood of confusion in the minds of investors." Primarily because of these factors, he concluded that Comcet's goods, services, or business are not likely to be confused with Comsat's. He also held that the evidence was insufficient to show damage to Comsat's image or good will and that Comcet was not guilty of unfair competition. Characterizing Comsat and Comcet as weak marks because they are acronyms derived from words in common use, he ruled that Comcet does not infringe Comsat's trade name or mark.[2] We reverse and remand the case for the entry of a decree enjoining Comcet, Inc., from using Comcet as either a trade name or a trademark.

## I. Comsat

Communications Satellite Corporation, established by the Communications Satellite Act of 1962 [47 U.S.C. § 701 et seq.], began using Comsat as its trade name shortly after its incorporation early in 1963 and as its service mark in October 1964. Since then, Comsat has become renowned for its world-wide satellite communications system. Although other United States companies provide intercontinental communications service by radio and cable, Comsat alone is authorized to use satellites for this pur-

---

1. Jurisdiction is based on diversity of citizenship—Comsat is a District of Columbia corporation and Comcet is a Maryland corporation—and on the Lanham Act, 15 U.S.C. § 1051 et seq.

2. Communications Satellite Corp. v. Comcet, Inc., 300 F.Supp. 559 (D.Md.1969).

pose. It furnishes services for all types of communications traffic, including voice, record, data, and television. By its own efforts, or through contracts with others, it conducts extensive research and development, and recently in association with IBM, it tested high speed transmission of data by computers via satellite. NASA now uses its services for the transmission of data from computer to computer.

Comsat is authorized by the Federal Communications Commission to sell global communications service only to other communications common carriers and to the federal government. Presently, it serves NASA and five communications common carriers—AT&T, IT&T, RCA Communications, Western Union International, and Hawaiian Telephone. It seeks to expand the market for its services by inducing many businesses to utilize its satellites through connections with the common carriers it serves. Comsat presently is limited to providing intercontinental communications services, but recently the FCC requested proposals from Comsat and other common carriers for a domestic satellite system. FCC Docket 16495 (1970).

## II. *Comsat's Name and Mark*

■ Comsat is a coined word that is not found in any dictionary. No one else is using it as a trade name, trademark, service mark, or for any other purpose. Comsat has only one function. It uniquely identifies the plaintiff's business and services. Contrary to the position taken by Comcet and the conclusion reached by the district judge, we believe Comsat's derivation from *communications* and *satellite* does not make it a weak mark. In Durox Co. v. Duron Paint Mfg. Co., 320 F.2d 882, 884 (4th Cir. 1963), upon which the defendant relies, we observed that Durox and Duron were weak marks because *Dur* is suggestive. Connoting durability, it

rendered the marks descriptive, and it had been used to describe this quality in other marks for protective and decorative coatings.[3] In contrast, while *Com* is the first syllable of many other marks, it is not uniquely descriptive of communications. Indeed, Comcet uses *Com* as an abbreviation for *computers,* and it enjoys wide popularity as a prefix in other marks for abbreviating such words as *community, compatible, comprehensive,* and *commercial.* Descriptive words, we recognize, are to be accorded only narrow protection as trade names or trademarks, but Comsat, we hold, is not such a word. It is unique and distinctive.

■ Regardless of its origin, Comsat has established a secondary meaning that qualifies it for protection. Cf. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 335, 59 S.Ct. 191, 83 L.Ed. 195 (1938). Comsat has spent about a million dollars using its name in promoting services and recruiting personnel. Its sales have amounted to many millions of dollars. Its stock, listed as Comsat, has been traded on the New York Stock Exchange since 1964. National magazines and newspapers frequently refer to the plaintiff by its trade name, Comsat. Indeed, as the district judge observed, "COMSAT has become recognized throughout the United States as identifying and distinguishing plaintiff and its communications services." These facts, coupled with Comsat's uniqueness as a coined word, establish it as a strong mark and a famous name. Cf. Polaroid Corp. v. Polaraid, Inc., 319 F.2d 830, 831 (7th Cir. 1963); Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 908 (3rd Cir. 1952). As such, it is entitled to broad protection, for counterfeits more successfully prey on strong marks than on weak. See Arrow Distilleries, Inc. v. Globe Brewing Co., 117 F.2d 347, 349 (4th Cir. 1941); Schechter, The Ra-

---

3. But see In re Dobeckmun Co., 286 F.2d 187, 48 C.C.P.A. 810 (1960), which rejects an argument based on the descriptive nature of the prefixes *Dura* and *Duro.*

tional Basis of Trademark Protection, 40 Harv.L.Rev. 813, 825 (1927).

## III. *Comcet*

Comcet, Inc., organized in 1968, is one of a family of computer companies related to Comress, Inc.[4] It is not, however, a wholly owned subsidiary, and its stock is traded over the counter. Comcet develops, manufactures, and sells communications computers which receive data over telephone and teletype lines, edit and verify the information, and relay it to data processing computers at appropriate times.

Before this suit was instituted, Comcet had only prepared advertisements and a prototype computer that it called Comcet 60. The advertisements were circulated after suit was filed. Comcet's computers sell for about $200,000. It has received a firm order for six computers from one of its related companies, and tentative orders for two from independent companies.

## IV. *Comcet's Name and Mark*

The name Comcet was selected in a one-hour meeting of two of the corporation's organizers. *Com* was chosen to suggest *computers* and the corporation's relationship to Comress; *c* stands for *communications*; *e* and *t* were selected to round out the name with a euphonious ending. Comcet, its organizers testified, is an acronym for *computer communications engineering technology*. The district court found that the men who selected Comcet knew of Comsat; that they did not believe Comcet would ever compete with Comsat; and that they did not adopt Comcet with any intention of capitalizing on Comsat's good will.

The Securities and Exchange Commission required Comcet to state in its prospectus: "Not related to 'Comsat', Communications Satellite Corporation." Moreover, Comsat promptly complained to Comcet of the similarity of names. Comcet, however, declined to change its name and mark.

## V. *Comparison of the Names and Marks*

█ There can be no doubt about the resemblance of Comcet to Comsat. They sound almost identical, and visual differences are slight. Whether the test be common law or statute, the likeness is so striking that it is apparent that Comcet —though requested not to do so—is using a colorable imitation of Comsat's name and mark. 15 U.S.C. § 1127; cf. Telechron, Inc. v. Telicon Corp., 198 F. 2d 903, 908 (3rd Cir. 1952); Little Tavern Shops, Inc. v. Davis, 116 F.2d 903, 906 (4th Cir. 1941); see 3 Callmann, Unfair Competition, Trademarks and Monopolies § 82.1(a) (3d ed. 1969). It is, moreover, no defense to this action that the defendant's organizers adopted the name, Comcet, without intention to trade on Comsat's image and good will. While evil intent may evidence unfair competition and deception, lack of guile is immaterial. Best & Co. v. Miller, 167 F.2d 374, 377 (2d Cir.), cert. denied, 335 U.S. 818, 69 S.Ct. 39, 93 L.Ed. 373 (1948); Edmondson Village Theatre, Inc. v. Einbinder, 208 Md. 38, 116 A.2d 377, 381 (1955).

## VI. *Trade Name Infringement*

██ Quite apart from its claim for trademark protection, Comsat has a distinct and separate cause of action to restrain infringement of its trade name. Telechron, Inc. v. Telicon Corp., 97 F. Supp. 131, 141 (D. Del. 1951), aff'd, 198 F.2d 903 (3rd Cir. 1952). Trade name protection finds its genesis in the common law, which in Maryland has been succinctly summarized in Drive It Yourself Co. v. North, 148 Md. 609, 130 A. 57, 59 (1925), as follows:

"[T]he right of a corporation to the exclusive use of its own name . . .

4. Comress is an acronym for *computer research systems* and *softwear*. Related companies are Computer Network Corporation (Comnet), Commed, Inc., which is an acronym for *computers* and *medicine*, and Computer Microtechnology, Inc.

exists at common law, and it includes the further right to prohibit another from using a name so similar to the corporate name as to be calculated to deceive the public." [5]

Following Nims, Unfair Competition and Trademarks §§ 10 and 11 (4th ed. 1947), the Maryland Court of Appeals classifies cases dealing with trade name protection into three general categories —(1) cases protecting a name consisting of distinctive, unique or fanciful words; (2) cases where actual fraud and deceit are employed; and (3) cases protecting a name, which, though consisting of words in common use, has acquired a secondary meaning. National Shoe Stores Co. v. National Shoes of N. Y., 213 Md. 328, 131 A.2d 909, 912 (1957). Comsat falls within the first class of names, for it is distinctive, unique, and fanciful. Authority for affording it broad protection is found in *National Shoe* where the Court said [131 A.2d at 912] "usually, the appropriation of such words alone is sufficient to give rise to a protectible right in the name."

■■ A trade name symbolizes the reputation of a business. Consumers are interested in the quality and cost of the goods or services it offers; suppliers are concerned with the prompt payment of bills and credit standing; investors, with financial stability, return and growth; labor, with rates of pay, fringe benefits and personnel policies; and the general public, with management's par-ticipation in public affairs. All of these factors, and more, make up "the communal mosaic in which a business enterprise must fit" and which its trade name reflects. 3 Callmann, Unfair Competition, Trademarks and Monopolies § 66.2, at 27 (3d ed. 1969). Infringement of a trade name is a tort touching all these factors. The gist of the wrong is the "invasion or violation of an individual trade identity." Pattishall, Trade-Marks and the Monopoly Phobia, 50 Mich.L.Rev. 967, 990 (1952); see also National City Bank v. National City Window Cleaning Co., 174 Ohio St. 510, 190 N.E.2d 437, 439 (1963). Judge Learned Hand aptly described the harm of infringement in Yale Electric Corp. v. Robertson, 26 F.2d 972, 974 (2d Cir. 1928):

"This is an injury, even though the borrower does not tarnish [the mark], or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

■ In most jurisdictions to obtain an injunction against trade name infringement, a plaintiff must prove that the public will likely be confused about the parties' goods, services, or businesses.[6]

5. *Maryland has also adopted a statute, patterned on the Model Corporation Act, prohibiting the use or imitation of trade names.* Md.Ann.Code art. 23, § 5(a) (3) (1966). In National Shoe Stores Co. v. National Shoes of N. Y., 213 Md. 328, 131 A.2d 909, 911 (1957), the Court of Appeals construed this statute to restate the common law as set forth in Drive It Yourself Co. v. North, 148 Md. 609, 130 A. 57, 59 (1925).
Trade names, as such, are not registrable under the Lanham Act. Courts differ over the extent to which §§ 44(b), (g), (h), and (i) of the Act [15 U.S.C. §§ 1126(b), (g), (h), and (i)] confer federal jurisdiction for the protection of trade names—a question we need not decide here. Compare Stauffer v. Exley, 184 F.2d 962 (9th Cir. 1950) with Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc., 240 F.2d 814 (5th Cir. 1957). See 4 Callmann, Unfair Competition, Trademarks and Monopolies § 98.4 (e) (3d ed. 1970).

6. For the effect of anti-dilution statutes, see Note, Dilution: Trademark Infringement or Will-O'-the-Wisp? 77 Harv.L. Rev. 520, 526 (1964).
A business need no longer prove either competition or fraudulent deception. Standard Oil Co. of N. M. v. Standard Oil Co. of Calif., 56 F.2d 973, 978 (10th

With respect to names that have acquired a secondary meaning, the Maryland Court of Appeals has expressly stated that "proof of actual confusion in specific instances is not necessary." National Shoe Stores Co. v. National Shoes of N. Y., 213 Md. 328, 131 A.2d 909, 913 (1957). While Maryland has not spoken of confusion when coined or arbitrary names are involved, we assume, without deciding, that the same rule would apply and that likelihood of confusion must be shown. Proof of this element, however, need only be slight. This is because of the common law's solicitude for unique names and the promptness with which Comsat first warned and then sued to vindicate its right.

■ The district judge found there is no likelihood of confusion. We are unable to accept this finding because on the entire evidence we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Several facts lead to the inference that confusion is likely. Both companies trade in the same geographical area and frequently solicit the same businesses. Although they do not compete, their services and products are closely related. Only a most perceptive ear can avoid initial confusion between the names when they are spoken, and rumor, which is often more destructive of good will than fact, most frequently travels by word of mouth.

■ The Securities and Exchange Commission was quick to detect the possibility of confusion, and for this reason it required Comcet to disclaim affiliation with Comsat. The expertise of the S.E.C. in matters of this kind, we believe, should not lightly be put aside. Moreover, Comcet's acquiescence in the S.E.C.'s decision lends credence to the validity of its ruling. The likelihood of confusion among investors is an adequate predicate for relief. Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3rd Cir.), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963); Nims, Unfair Competition and Trademarks § 91, at 278–79 (4th ed. 1947). And this is so even if the infringer has not yet issued its stock. Fund of Funds, Ltd. v. First American Fund of Funds, Inc., 274 F. Supp. 517 (S.D.N.Y. 1967).

Here, quite naturally, proof of actual confusion is slight because the suit was instituted when Comcet was in its infancy. One witness, however, testified he was initially confused when his broker advised him of the purchase of Comcet's stock. The fact that the true identity of Comcet was quickly recognized is of little moment. The significance of this incident is its role as a harbinger of confusion.

Finally, we reiterate that Comsat coined its name first; Comcet followed. In these circumstances Judge Learned Hand's observation in Lambert Pharmacal Co. v. Bolton Chemical Corp., 219 F. 325, 326 (S.D.N.Y. 1915) is pertinent:

"Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field."

■ In sum, the evidence establishes that the likelihood of confusion is sufficient to impair the public's interest in accurately identifying the businesses and to prejudice Comsat's image. Either of these possibilities is enough to justify an injunction to protect Comsat's trade name.

Cir. 1932); see Mascaro v. Snelling and Snelling, 250 Md. 215, 243 A.2d 1, 10,

cert. denied, 393 U.S. 981, 89 S.Ct. 451, 21 L.Ed.2d 442 (1968) (dictum).

## VI. *Trademark Infringement*

■ The plaintiff registered Comsat as its service mark in 1967.[7] Therefore, it is entitled to the protection of the Lanham Act, which provides in part, § 32 [15 U.S.C. § 1114]:

"(1) Any person who shall, without the consent of the registrant—

"(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

&ast; &ast; &ast; &ast; &ast; &ast;

"shall be liable in a civil action by the registrant &ast; &ast; &ast;."

■ The defendant uses Comcet as a trademark for its products. It presently markets a computer bearing the mark COMCET 60. Comsat acknowledges that its claim of trademark infringement presents a narrower issue than its right to trade name protection. Cf. Polaroid Corp. v. Polaraid, Inc., 319 F.2d 830, 833 (7th Cir. 1963). Nevertheless, it urges, and we agree, that it is entitled to injunctive relief. Here the outcome turns on the likelihood of confusion among prospective customers, but much that we have written about trade name infringement is applicable to the trademark claim, for the issues overlap. Resemblance of the marks is not alone sufficient to establish the likelihood of confusion. Other factors such as the nature of the goods, the channels of trade, and the class of purchasers must be considered. American Drill Bushing Co. v. Rockwell Mfg. Co., 342 F.2d 1019, 1021, 52 C.C.P.A. 1173 (1965); see Restatement of Torts § 731 (1938). When, as here, the parties are not competitors, the issue of infringement hinges on the likelihood of confusion about the source or sponsorship of the defendant's goods and services. Cf. Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir.), cert. denied, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963); Vogue Co. v. Thompson-Hudson Co., 300 F. 509 (6th Cir. 1924), modified, 6 F.2d 875 (6th Cir. 1925), cert. denied, 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850 (1926); see Wolff, Non-Competing Goods in Trademark Law, 37 Colum.L.Rev. 582 (1937).

■ Comcet's products are closely related to Comsat's services. Comcet's computers receive data primarily over facilities of AT&T, one of Comsat's customers. And Comcet's computers can be used to receive data transmitted by Comsat's satellites. Moreover, Comcet seeks to sell its computers to many of the same companies that Comsat solicits. For these reasons, the district court properly found that the parties "are in different but sometimes interrelated industries."

Despite the relationship of the businesses and the resemblance of the marks, Comcet argues that the people who purchase expensive computers and communications services are so sophisticated and knowledgeable that they will not be confused. However, the expertise of purchasers does not always assure the absence of confusion. American Mfg. Co. v. Heald Machine Co., 385 F.2d 456, 458, 55 C.C.P.A. 838 (1967), cert. denied, 393 U.S. 824, 89 S.Ct. 86, 21 L.Ed. 2d 95 (1968); American Drill Bushing Co. v. Rockwell Mfg. Co., 342 F.2d 1019, 1022, 52 C.C.P.A. 1173 (1965). But cf. Fram Corp. v. Boyd, 230 F.2d 931, 934 (5th Cir. 1956); Sunbeam Lighting Co. v. Sunbeam Corp., 183 F.2d 969, 972 (9th Cir. 1950), cert. denied, 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665 (1951). See generally 3 Callmann, Unfair Com-

---

7. Registration No. 828,366, Class 104, May 2, 1967 for COMSAT. Registration No. 841,095, Class 104, December 5, 1967

for COMSAT using a globe as a substitute for the letter "O."

petition, Trademarks and Monopolies § 81.2(c) (3d ed. 1969); Developments in the Law—Trademarks and Unfair Competition, 68 Harv.L.Rev. 814, 862 (1955). Even buyers of specialized equipment may assume that related corporations are the source of noncompetitive goods. Comcet's organizers recognized this fact. They realized that names may connote relationship. One of their reasons for selecting Comcet was to emphasize its connection with Comress, Inc. But to one who is uninitiated in the intricacies of their corporate family, Comcet may more readily suggest relationship to Comsat.

Complementary products, or services, are particularly vulnerable to confusion. Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407 (2d Cir. 1917), cert. denied, 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540 (1918) (pancake flour and pancake syrup). A reasonable person may well believe that Comcet's communications computers come from a source related to Comsat's communications services. The possibility of confusion is increased because there are firms, such as RCA, that manufacture computers and also offer communications services.

Adding weight, though not decisive, is the fact that since the trial in the district court, the FCC has authorized Comsat to submit a proposal for a domestic satellite system. This offers the possibility of greatly expanding Comsat's field of operations and increasing the number of the parties' common customers.

We conclude, therefore, that the evidence establishes sufficient likelihood of confusion among prospective purchasers about the source or sponsorship of Comcet's computers to justify protection of Comsat's service mark.

Comsat is entitled to an injunction prohibiting the defendant from using Comcet in its name, publicity, advertising, stock sales, general business activity, and trademark. The judgment of the district court. is reversed, and this case is remanded for further proceedings consistent with this opinion.