PERINI CORPORATION,
Plaintiff–Appellee,

v.

PERINI CONSTRUCTION, INC.,
Defendant–Appellant.

No. 89–2854.

United States Court of Appeals,
Fourth Circuit.

Argued July 19, 1990.

Decided Sept. 21, 1990.

Rehearing and Rehearing In Banc
Denied Oct. 16, 1990.

---

Roger Charles Simmons, Gordon, & Simmons, Frederick, Md., argued (Ralph Gordon, Leslie A. Powell, Gordon & Simmons, Frederick, Md., on the brief), for defendant-appellant.

Calvin Hayes Cobb, Jr., Steptoe & Johnson, Washington, D.C. (Maureen O'Keefe Ward, Mark A. Moran, Steptoe & Johnson, Washington, D.C., on the brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

In an attempt to find an answer to Shakespeare's query "What's in a name?" a well-established construction firm, Perini Corporation, instituted a trade name and service mark infringement suit against the Perini Construction Company ("Perini Construction") of Hagerstown, Maryland. The district court granted Perini Corporation's motion for summary judgment, holding that Perini Corporation had established a secondary meaning in the surname "Perini" as used in the construction industry and that Perini Construction's use of that name in providing its services created a likelihood of confusion. The district court consequently enjoined Perini Construction from using "Perini" in its construction business. Perini Construction has appealed the district court's decision, contending that summary judgment was inappropriate because genuine issues of material fact had not been resolved.

Although we agree with the district court as to Perini Corporation's establishment of secondary meaning in the "Perini" name, we believe that there is a genuine dispute of material fact as to whether the defendant's use of the name creates a likelihood of confusion. Accordingly, we reverse the district court's order granting summary judgment in favor of the plaintiff.

## I. FACTS

Bonfiglio Perini founded a construction company in Massachusetts at the turn of

the century and, in 1918, incorporated the business as B. Perini & Sons, Inc. In 1957, the company changed its name to Perini Corporation. In 1961, Perini Corporation made a public offering of its stock, which has been publicly traded since that time.

Perini Corporation, headquartered in Framingham, Massachusetts, is a unionized company and is one of the largest full-service construction firms in the country, providing services on a national and international basis. Examples of Perini Corporation's projects include the Sir Adam Beck Tunnels under Niagara Falls, the Prudential Tower in Boston, the Bloomington Dam in West Virginia, sections of the Trans Alaska Pipeline, major hotels in Las Vegas and Atlantic City, and an Israeli airbase.

In 1970, Dominick Perini, with his wife Kathleen, founded Perini Construction, Inc., a general contracting and construction firm in Hagerstown, Maryland. Although Dominick Perini was aware of the existence of Perini Corporation, he had never known it to do any work in the Western Maryland area. Perini Construction, like Perini Corporation, provides commercial and industrial construction services. Perini Construction has built numerous schools, hospitals, prisons, and office buildings in the mid-Atlantic area, which includes Maryland, West Virginia, Virginia, and Pennsylvania. Examples of Perini Construction's work include projects at the Hagerstown, Maryland, Junior College, the Winchester Mall in Virginia, the Martinsburg, West Virginia, City Hospital, and a physical education complex for Sheperd College in West Virginia.

Perini Corporation did not have any federally registered rights in the "Perini" name and never attempted to register it until the present suit was filed. Perini Corporation first notified Perini Construction of its concern over the use of the "Perini" name in 1983, more than 13 years

after Perini Construction had adopted it. When matters between the two companies were not worked out amicably, Perini Corporation instituted the present infringement action.

Suit was filed in the United States District Court for the District of Maryland on April 29, 1985. Perini Corporation alleged that use of the "Perini" name by Perini Construction constituted service mark and trade name infringement and unfair competition. It sought a permanent injunction against the defendant's continued infringement.[1]

On June 26, 1989, after hearing motions for summary judgment, the district court issued an opinion holding that Perini Corporation, by virtue of its prior adoption and establishment of a secondary meaning in the Perini surname, had established rights to "Perini" as a trade name for its construction services. *Perini Corp. v. Perini Construction*, 715 F.Supp. 719, 723 (D.Md. 1989). The court further determined that the defendant's use of the "Perini" name created a likelihood that an appreciable number of ordinary purchasers would be confused about the source of the defendant's services. *Id.* The district court rejected the defendant's proffered defenses of laches and abandonment. *Id.* at 725. Thus, on summary judgment, the court found that the defendant was liable to the plaintiff for trade name infringement. On November 17, 1989, the district court permanently enjoined Perini Construction from using the name "Perini" in offering its services.[2]

## II. STANDARD OF REVIEW

Orders granting summary judgment are reviewed *de novo;* that is, the appellate court, without deference, applies the same standard as did the trial court. *Helm v. Western Md. Ry. Co.*, 838 F.2d 729, 734 (4th Cir.1988). Summary judgment is prop-

---

1. Perini Corporation dropped its damages claim when it was unable to quantify its financial losses.

2. The court's injunction against Perini Construction, its officers, and its affiliates prohibited them from using the "Perini" name as part of a

trade name or trademark in offering any goods or services that Perini Corporation currently offers or will offer in the future. In view of the remand for trial, however, we are not called on to decide whether the scope of the injunction was unreasonably broad.

er only when there is no genuine issue of material fact. F.R.Civ.P. 56(c). In other words, to grant summary judgment the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). And, in evaluating a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. *Pignons S.A. De Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981).

We have previously affirmed an order granting summary judgment in favor of a trademark plaintiff when the defendant's liability for infringement was "unassailably established." *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148–49 (4th Cir.1987). We therefore proceed to review *de novo* whether Perini Construction's liability for trademark infringement has been unassailably established or instead whether the defendant deserves a trial.

### III. THE LEGAL FRAMEWORK

The attachment of a businessman's surname to the goods and services provided by him is a useful and venerable practice, which, in an earlier day, was viewed as a personal and inalienable birthright. *See Basile, S.p.A. v. Basile*, 899 F.2d 35, 39 (D.C.Cir.1990) (citing cases from the earlier era); *Taylor Wine Co. v. Bully Hill Vineyards*, 569 F.2d 731, 734 (2d Cir.1978) (same). But the Supreme Court, at the beginning of the twentieth century, made clear that the right of an individual to use his name in connection with his trade must yield to the need to eliminate confusion from the marketplace. *See Herring–Hall–Marvin Safe Co. v. Hall's Safe Co.*, 208 U.S. 554, 559, 28 S.Ct. 350, 351, 52 L.Ed. 616 (1908); *Thaddeus Davids Co. v. Davids Manufacturing Co.*, 233 U.S. 461, 471, 34 S.Ct. 648, 652, 58 L.Ed. 1046 (1914); *L.E. Waterman Co. v. Modern Pen Co.*, 235 U.S. 88, 94, 35 S.Ct. 91, 92, 59 L.Ed. 142 (1914). Congress' attempt at eliminating confusion from the marketplace with regard to the identification of goods and ser-

vices rests in the Lanham Act, 15 U.S.C. §§ 1051–1127 (1982).

Section 43(a) of the Lanham Act, which prohibits the use of false descriptions, representations, or designations of origin, generally has been construed to protect against trademark, service mark, and trade name infringement even though the mark or name has not been federally registered. 15 U.S.C. § 1125(a) (1982); *see, e.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986). "The gist of a claim for trademark infringement ... is a sanction against one who trades by confusion on the goodwill or reputation of another, whether by intention or not." *Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F.Supp. 198, 209 (D.Md.1988). Once a particular mark or name is deemed eligible for protection, the inquiry for determining if it has been infringed is whether a junior user's employment of an identical or similar mark or name creates a "likelihood of confusion" in the marketplace. *See Spartan Food Systems, Inc. v. HFS Corp.*, 813 F.2d 1279, 1284 (4th Cir.1987); *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir.1985). Eligibility for protection depends upon the market's association between the particular mark and the goods or the business, which, in turn, depends upon the degree of the mark's peculiarity.

In *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976), Judge Henry J. Friendly classified word marks into four categories: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Id.* at 9. If a term is generic (the common descriptive name for a thing), it is ineligible for trademark protection. For the public has an inherent right to call a product by its generic name. *See Thompson Medical Co.*, 753 F.2d at 216 (citing *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 119, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938)). If terms are fanciful (words invented solely for their use as trademarks), arbitrary (common words applied in unfamiliar ways), or suggestive (words partially descriptive and partially fanciful), the association between the mark and its source is presumed and the mark is

eligible for trademark protection. *Abercrombie & Fitch*, 537 F.2d at 9–11; *see also 815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 647 (2d Cir.1988).

■■■ But if a mark is merely descriptive, then proof of secondary meaning in the marketplace is required for the mark to be eligible for protection. *Thompson Medical Co.*, 753 F.2d at 212–13 & n. 9. Names—both surnames and first names—are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning. *815 Tonawanda Street Corp.*, 842 F.2d at 648–49.[3]

## IV. SECONDARY MEANING

■■ Secondary meaning is the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify. For example, the descriptive phrase "quick stop" used to describe convenience stores would only acquire secondary meaning if a substantial portion of the consuming public were to associate the term with a particular business.

"Secondary meaning exists if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 160–61 (4th Cir.), *cert. denied*, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962). In the case of a trade name, secondary meaning is "[t]he power of a name ... to symbolize a particular business." *Ideal Toy Corp. v. Kenner Products Div'n of General Mills Fun Group, Inc.*, 443 F.Supp. 291, 305 n. 14 (S.D.N.Y.1977). If a trade name has not acquired secondary meaning, the

purchaser will not make an association with a particular producer and thus will not be misled by an identical or similar mark. *Thompson Medical Co.*, 753 F.2d at 216.

"Proof of secondary meaning entails vigorous evidentiary requirements." *Thompson Medical*, 753 F.2d at 217. The Second Circuit has offered the following factors as relevant to, though not dispositive of, the "secondary meaning" inquiry: (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use. *Id.*

The district court below held that "there can be little doubt that Perini Corp. has established secondary meaning in the name Perini." 715 F.Supp. at 722. The court noted that Perini, which has used the surname since 1918, has been doing business nationally and internationally since 1950 and had entered the Maryland market around the time of World War II. The court recognized that the company has consistently bid for work in the Maryland area and has spent over $12.8 million on advertising and corporate relations since 1960. Further, the court noted that the firm has received much unsolicited media coverage by virtue of being traded on the American Stock Exchange, being one of the leading construction firms in the country, and building record-setting and award-winning projects. The court also emphasized the plaintiff's sales success: "It has been listed in the *Engineering News Record*'s 'Billion Dollar Club' since 1986. Since 1980, consolidated revenues in the [mid-Atlantic] states have also been substantial." 715 F.Supp. at 719.

■■■ But the plaintiff has the burden to show secondary meaning (1) in the defendant's trade area and (2) prior to the time

---

**3.** We note that although the legal framework we here apply is derived from § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Maryland law would provide the same framework. That is, for one to make out a claim of trade name infringement under Maryland law, he must show, in the case of a surname, that the name

has acquired a secondary meaning and that the relevant public will likely be confused by the defendant's use of an identical or similar name. *See Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1250–51 (4th Cir.) (interpreting Maryland law), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970).

when the defendant entered the market. *See N. Hess' Sons, Inc. v. Hess Apparel, Inc.*, 738 F.2d 1412, 1413 (4th Cir.1984) (per curiam). Thus, Perini Corporation had to show that the "Perini" surname acquired secondary meaning (1) in Perini Construction's trade area, the mid-Atlantic region, and (2) as of 1970, when Perini Construction began operation. Therefore, the district court erred by focusing on periods after 1970 in its conclusion that the "Perini" surname acquired secondary meaning. Furthermore, the district court made little attempt to connect the plaintiff's nationwide statistics to the defendant's trade area.

■ Taking away the post–1970 items, many of the Second Circuit's factors went unconsidered: (1) the amount of advertising expenditures prior to 1970 that reached the defendant's trade area was not considered; (2) there were no consumer studies introduced; (3) the volume of sales in the relevant area prior to 1970 was not considered; (4) the amount of media coverage that Perini Corporation received prior to 1970 was not shown; and (5) no attempts to plagiarize the mark were shown.

Yet Perini Corporation does cite information in the record that indisputably shows that by 1970 the "Perini" name, as used in the construction industry, had acquired a secondary meaning in the mid-Atlantic region. Perini Corporation has used the surname in a corporate name since 1918 and in its current form since 1957. During World War II, Perini Corporation worked on numerous projects in Maryland and Pennsylvania for the U.S. Army Corps of Engineers. In the mid-Atlantic region, Perini Corporation's volume of sales prior to 1970 exceeded $100 million. In 1963, Perini Corporation was ranked second among 81 top U.S. contractors based on $279 million of new contracts in 1962. In 1964, Perini Corporation was ranked 13th of the nation's top 400 contractors. It built the world's tallest office building outside of New York City when it built the Prudential

Tower in Boston in 1964. Indeed, the defendant's founder, Dominick Perini, said that by 1970, when he formed the defendant company in Hagerstown, Maryland, he had heard of Perini Corporation through its involvement with the Boston Braves as well as its construction activities. Further, evidence showed that Perini Corporation enjoyed free publicity on a national basis throughout the 1950's and 60's.

Defendant responds to most of these facts, which it does not dispute, by pointing to its own recognition and media coverage. In particular, the defendant cites affidavits of individuals who associate the "Perini" name with it, not the plaintiff. But just as the plaintiff's post–1970 information is irrelevant to the issue of secondary meaning, so, too, is the post–1970 information which the defendant cites about itself.

The defendant has also responded that the plaintiff did no business in Maryland for twenty years prior to the defendant's incorporation. But the plaintiff did bid, albeit unsuccessfully, for many Maryland jobs during that time period. The amount of actual work performed by the plaintiff is not dispositive, particularly when the company maintained a marketing presence by submitting numerous bids for jobs.

As a fact-finder may be exposed to harmless error, so, too, may a trial judge when deciding on summary judgment whether there are disputed material facts. *See Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1281 (5th Cir.1981). While the score for the plaintiff as found by the trial judge is too high, it is still substantially positive, and the defendant still scores zero so far as a material fact dispute as to secondary meaning is concerned. Although the district court incorrectly examined the evidence, we conclude that, under the correct legal analysis, no genuine issue of material fact exists to dispute the fact that the name "Perini," as used in the construction industry, acquired a secondary meaning in the mid-Atlantic region by 1970.[4]

---

**4.** Reversal as to the likelihood of confusion issue, *see infra,* requires reversal as to the entirety of the district court's judgment.

## V. LIKELIHOOD OF CONFUSION

▮ The ultimate question, for purposes of determining liability in trademark infringement actions, is "whether there exists a 'likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question.'" *Thompson Medical*, 753 F.2d at 213 (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978)). Judge Friendly, writing for the Second Circuit in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), listed several factors to be taken into account in making the likelihood of confusion assessment: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's intent in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers. *Id.* at 495; *see Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984) (adding "similarity of advertising" as a factor); *Sun–Fun Products, Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 189 (5th Cir.1981).

The district court found that there was a likelihood of confusion between Perini Corporation and Perini Construction. It noted that both companies are in the construction business, both call themselves "Perini," and both advertise under the name "Perini." 715 F.Supp. at 723. The court also noted that both firms use the same marketing channels and, on occasion, have even bid for the same job. The court cited evidence of actual confusion between the two companies, including "receiving the other's invoices, misdirection of correspondence about bids, one company being blamed for the other's labor problems, the naming of the wrong company on legal pleadings, and the confusion that the two companies are actually branch offices of the other." *Id.*

Although no one factor is dispositive of the "likelihood of confusion" inquiry, the sophistication and expertise of the usual purchasers can preclude any likelihood of confusion among them stemming from the similarity of trade names. *See, e.g., Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 173–74 (5th Cir.1986) (reversing finding of infringement in part because purchasers, who buy goods for institutional purposes at a high price, are virtually certain to be informed buyers), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1206–07 (1st Cir.1983) (affirming district court's summary judgment for defendant because "it is simply inconceivable that purchasers of the ... products could be confused" in light of the sophisticated purchasing decision); *cf. Dawson v. Hinshaw Music Inc.*, 905 F.2d 731 (4th Cir.1990) (in deciding whether substantial similarity exists between copyrighted work and allegedly infringing work, court must consider whether intended audience has specialized expertise relevant to purchasing decision).

As the Second Circuit has observed, "every product has its own separate threshold for confusion of origin." *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 733 (2d Cir.1978). In that case, the court noted that "[w]ine is a product whose quality is accepted by many simply on faith in the maker." *Id.* Hence, a confusing similarity in names on the wine bottles was likely to result in confusion among ordinary purchasers.

The district judge below erred because he made no inquiry into the sophistication of the ordinary consumer of construction services—most likely a highly trained procurement professional whose sensitivity is heightened by the responsibility of sensibly spending millions of dollars. Evidence introduced by Perini Construction casts considerable doubt on the district court's implicit assumption that construction services are procured on the basis of the name of the firm alone. For instance, in an affidavit a representative of the Army Corps of Engineers explained that the Government "placed a strong emphasis on intimate knowledge of each and every one of the

companies to which it awarded contracts." He said, "I cannot imagine ever encountering a situation where the Army Corps of Engineers would mistakenly award a contract, especially a multi-million dollar contract, to a company with a similar name to another company simply on the basis of a similar name." Fred McNeely, a private construction administrator, swore that "in all my years of construction work ... I have never heard of a situation where ... any sophisticated buyer of construction services inadvertently awarded a job to the wrong company. On projects where I have been involved, the investigation process is simply too detailed to allow that to happen." Numerous affidavits supporting the unlikelihood of confusion among sophisticated buyers were introduced.

The plaintiff claims that lack of consideration of consumer sophistication does not preclude a finding of infringement when every other factor indicates a likelihood of confusion. Yet, we hold that in a market with extremely sophisticated buyers, the likelihood of consumer confusion cannot be presumed on the basis of the similarity in trade name alone, particularly without the benefit of trial.

The plaintiff also contends that, even if professional buyers are not likely to be confused, the likelihood of confusion inquiry, when applied to trade names, embraces the public as a whole. And, indeed, we have so indicated:

> A trade name symbolizes the reputation of a business. Consumers are interested in the quality and cost of the goods or services that it offers; suppliers are concerned with the prompt payment of bills and credit standing; investors, with financial stability, return and growth; labor, with rates of pay, fringe benefits and personnel policies; and the general public, with management's participation in public affairs. All of these factors, and more, make up "the communication mosaic in which a business enterprise must fit" and which its trade name re-

flects. Infringement of a trade name is a tort touching all these factors. *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1250 (4th Cir.) (likelihood of confusion among investors is adequate predicate for relief), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970).

In order for a likelihood of confusion among the public, but not typical purchasers, to provide the basis for a trade name infringement action, it must be shown that public confusion will adversely affect the plaintiff's ability to control his reputation among its laborers, lenders, investors, or other group with whom the plaintiff interacts. *See id.; cf. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979). Here, such a showing was not made, certainly not one entitling Perini Corporation to summary judgment in its favor. A trade name infringement case under § 43(a) of the Lanham Act cannot be made out by merely presuming that the public will be confused without an identification of how the forecasted public confusion will "damage" the plaintiff. *See* 15 U.S.C. § 1125(a) (person who uses false representation liable to person "who believes he is likely to be *damaged*") (emphasis added).

The failure of the district court to take the sophistication of the usual purchaser into account, and of the plaintiff to have established beyond dispute any adverse effect from general public confusion, made summary judgment inappropriate. The material issue of likelihood of confusion remains for trial.[5] *See Pizzeria Uno*, 747 F.2d at 1526–27 (likelihood of confusion is a factual issue).

Accordingly, the judgment of the district court is

REVERSED AND REMANDED.

---

**5.** Perini Construction has also appealed the district court's summary judgment on the ground that the district court improperly rejected its laches defense to Perini Corporation's trade-

mark infringement claim. Because we reverse the decision of the district court for reasons already discussed, we refrain from addressing the availability *vel non* of the laches defense.