940 F.2d 651
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re C-T OF VIRGINIA, INCORPORATED, formerly known as
Craddock-Terry Shoe Corporation, Debtor.
C-T OF VIRGINIA, INCORPORATED, formerly known as
Craddock-Terry Shoe Corporation, Plaintiff-Appellee,
v.
PAINEWEBBER, INC., Defendant-Appellant.
In re C-T OF VIRGINIA, INCORPORATED, formerly known as
Craddock-Terry Shoe Corporation, Debtor.
C-T OF VIRGINIA, INCORPORATED, formerly known as
Craddock-Terry Shoe Corporation, Plaintiff-Appellant,
v.
PAINEWEBBER, INC., Defendant-Appellee.
 Nos. 90-1557, 91-1402.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1991.
Decided July 30, 1991.
 
 Appeals from the United States District Court for the Western District of Virginia, at Lynchburg. Jackson L. Kiser, District Judge. (CA-90-22-L)
 Jonathan S. Greenberg, Weil, Gotshal & Manges, New York City (Argued), for appellant; Kevin P. Hughes, Ann E. Dibble, Howard B. Comet, Weil, Gotshal & Manges, New York City, on brief.
 Harold F. Bonacquist, Traub, Bonacquist, Yellen & Fox, New York City (Argued), for Appellee; Frederick J. Levy, Paul Traub, Traub, Bonacquist, Yellen & Fox, New York City, Edward B. Lowry, Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., Charlottesville, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal from a decision of the District Court for the Western District of Virginia in which that court granted the Plaintiff's Motion for Summary Judgment. Appellant argues that the district court decision rests on both legal and factual error. We disagree and therefore affirm the district court.
 
 BACKGROUND
 I. Factual Background
 
 2
 This case arises from the role of PaineWebber, Inc., in the sale of the Craddock-Terry Shoe Corporation ("Craddock-Terry") to HH Holdings, Inc. Undisputed evidence submitted to the district court on summary judgment establishes the following facts except as noted. In October 1985, PaineWebber entered an agreement with HH Holdings, under which PaineWebber would, and eventually did, provide HH Holdings with financial advice regarding a proposed acquisition of Craddock-Terry. Pursuant to the agreement PaineWebber was to receive an initial $600,000 acquisition fee and also was to charge a "standard fee comparable to similar financings" with respect to any permanent financing that it arranged for the acquisition. The parties referred to the latter fee, which ultimately amounted to $1 million, as the "equity financing fee." The entire $1.6 million was due at the closing of the acquisition, which occurred as planned on April 30, 1986.
 
 
 3
 At the time of the closing, HH Holdings lacked funds to pay PaineWebber. Consequently, the parties agreed to transfer the debt owed Painewebber to Craddock-Terry, which agreed to pay the debt when its liquidity increased. After the closing, PaineWebber maintained a relationship with Craddock-Terry. The parties dispute the nature of this post-closing role. However, in deposition testimony the PaineWebber "manager" on the account, Rory Riggs, stated that its role was as general advisor; in addition, a PaineWebber "associate", Christopher Atayan testified that PaineWebber remained involved to insure that Craddock-Terry would pay the outstanding fee. In its July 1986 financial statement, Craddock-Terry acknowledged the $1.6 million debt to PaineWebber.
 
 
 4
 It is undisputed that Craddock-Terry failed to meet its operating projections and never achieved the liquidity originally contemplated by PaineWebber when it agreed to defer its fees. Nonetheless, in late 1986 Craddock-Terry received certain reversion funds in connection with the termination of a pension plan, and on November 26, 1986, it paid PaineWebber $600,000 from these funds. All deposition testimony submitted to the district court--including that of PaineWebber witnesses--agrees that this payment was in satisfaction of the preacquisition debt of HH Holdings to PaineWebber for its role in the acquisition. For example, Riggs testified that the payment satisfied "a portion" of the fee; and Elizabeth Lambert, who submitted PaineWebber's proof of claim in Craddock-Terry's subsequent bankruptcy proceedings, essentially testified that PaineWebber submitted a claim against the bankrupt estate in the amount of $1 million because Craddock-Terry had paid $600,000 of the initial $1.6 million bill.
 
 
 5
 From the day of its acquisition by HH Holdings, Craddock-Terry was undercapitalized and faced financial uncertainty, as its liquidity failed to increase in line with its business projections. On October 21, 1987, its financial problems came to a head and Craddock-Terry filed for protection pursuant to the federal bankruptcy laws. In its statement of liabilities filed with the district court at that time, Craddock-Terry stated that PaineWebber held an unsecured claim in the amount of $1 million. As suggested above, PaineWebber submitted a claim in the bankruptcy proceedings for $1 million.
 
 II. Procedural History
 
 6
 In January 1990, Craddock-Terry filed this action against PaineWebber, attempting to recoup the $600,000 paid PaineWebber in November 1986 and to cancel the remaining indebtedness. The Complaint sets forth four counts, including allegations that the payment constituted a preferential transfer and a fraudulent conveyance under the Bankruptcy Code, as well as a voidable voluntary conveyance under the Virginia Code. The Complaint also requests that the court disallow PaineWebbers claim in the bankruptcy, implicitly challenging the validity of Craddock-Terry's assumption of HH Holding's obligation to PaineWebber.
 
 
 7
 Repeated discovery disputes marked the development of the case prior to the district court's entering summary judgment on behalf of Craddock-Terry. In May 1990, the district court ruled that discovery would be cut off in November 1990. In June 1990, PaineWebber served its first set of interrogatories and first request for production of documents. The discovery requests sought, among other things, the identities of individuals with knowledge and documents related to Craddock-Terry's ability to pay PaineWebber the fee owed by HH Holdings and information regarding other creditors of CraddockTerry at the time that it paid PaineWebber the $600,000 in November 1986.
 
 
 8
 In August 1990, Craddock-Terry answered the requests, listing three indices of available documents. It did not, however, produce any of the specific documents requested. In response to the interrogatories, Craddock-Terry invoked Rule 33(c) of the Federal Rules of Civil Procedure, stating that the answers may be found in the documents listed. In response to the query regarding creditors of Craddock-Terry in November 1986, Craddock-Terry referred PaineWebber to a document labeled "Unpaid Obligations of Craddock-Terry Incurred Prior to April 30, 1986."
 
 
 9
 In September 1990, Craddock-Terry moved for summary judgment, requesting that the Court find that the $600,000 payment was a fraudulent conveyance and a voidable voluntary conveyance. In opposition, PaineWebber argued that additional discovery was necessary to elucidate genuine issues of fact, that the evidence itself already stated genuine issues and that it was actually entitled to summary judgment on Craddock-Terry's fraudulent conveyance and voidable voluntary conveyance claims.
 
 
 10
 The District Court granted Craddock-Terry summary judgment on its claim. The court based its decision on Virginia Code Sec. 55-81, finding that the undisputed facts established that the $600,000 payment was a voidable voluntary conveyance and that, for the same reasons, the assumption underlying the debt was voidable as well. The district court reasoned that the transfer of assets was absent consideration as, in its view, PaineWebber provided neither valuable indirect benefits prior to the closing to Craddock-Terry nor services directly to it afterwards. The Court did not address whether other creditors of PaineWebber existed at the time of the payment. The district court also rejected PaineWebber's argument that consideration supported the payment because it was in satisfaction of an antecedent debt. The court thus held that the assumption and payment need not be recognized because "no 'consideration deemed valuable in law' was given." The court also disallowed PaineWebber's $1 million claim in the bankruptcy proceedings, reasoning that Craddock-Terry's assumption of it was "voidable for all of the reasons that the $600,000 payment is voidable."
 
 
 11
 PaineWebber appeals the district court's order entering summary judgment against it, arguing that the district court failed to consider all the necessary elements of a voidable voluntary conveyance, that genuine issues of fact existed and that the court did not allow adequate discovery prior to entrance of the judgment. Craddock-Terry appeals the district court's denial of attorney's fees pursuant to Virginia Code Sec. 55-82.
 
 DISCUSSION
 
 12
 I. Did the District Court Adequately Address the Elements of
 
 
 13
 a Voidable Voluntary Conveyance?
 
 
 14
 PaineWebber first argues that the court below erred by failing to fully address whether the November 1986 payment was a voidable voluntary conveyance. In particular, PaineWebber suggests that the court overlooked a material section of the Virginia law under which it granted Craddock-Terry summary judgment. At the time of the payment (and applicable herein), Virginia Code Sec. 55-81 provided: "Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law ... shall be void as to creditors whose debts shall have been contracted at the time it was made...." The statute thus sets forth a simple two-step test for determining the validity of a pre-bankruptcy conveyance, such as the $600,000 payment at issue. To void the conveyance under Virginia law, CraddockTerry must show (1) that the conveyance was not made upon consideration deemed valuable in law; and (2) that creditors existed at the time of the conveyance. See, e.g., Inspiration Coal, Inc. v. Mullins, 690 F.Supp. 1502, 1505 (W.D.Va.1988).
 
 
 15
 PaineWebber asserts that the trial court erred in its application of the second prong of this test in granting summary judgment. First, PaineWebber argues that the district court erroneously failed to address the test's second prong: whether creditors existed at the time of the conveyance. The importance of this inquiry arises from the fact that in Virginia a voluntary conveyance is voidable only as to creditors existing at the time of the conveyance and who continue as creditors into the time of the bankruptcy. See Barnes v. Vadico Terminals, Inc. 408 F.2d 31, 34 (4th Cir.1969). Because this Court reviews the entire record de novo, however, the district court's failure to explicitly articulate a finding regarding the existence of creditors in November 1986 does not present an impediment to affirmance unless the record is inconsistent with the implicit conclusion reached below.[1]
 
 
 16
 PaineWebber argues that at summary judgment Craddock-Terry did not display by undisputed evidence that it had outstanding creditors in November 1986 who remained as creditors of the corporation during pendency of the bankruptcy proceedings. PaineWebber argues that the only pertinent evidence in this regard is the affidavit of Richard Robinson, president of Craddock-Terry, and the April 1986 financial statement attached to his affidavit. In the affidavit, Robinson states that each of the 22 debts on the ledger was contracted for and arose prior to the April 1986 conveyance. PaineWebber argues that this evidence is irrelevant because the material issue is whether Craddock-Terry had creditors in November 1986, not seven months earlier.
 
 
 17
 PaineWebber's argument, in the view of this Court, falls short. The Robinson affidavit states that the creditors listed as of April 1990 each hold an "undisputed, unpaid, valid and subsisting claim against Craddock-Terry." The statement necessarily implies that these debts existed not only in April 1986 but through the pendency of the bankruptcy action, including and well after November 1986. Furthermore, as Craddock-Terry points out, numerous of these creditors have asserted claims in Craddock-Terry's bankruptcy proceedings based on the debts listed in the April 1986 ledger, further establishing both their continued existence and their existence in November 1986.[2] The Court thus concludes that this evidence--in the absence of any contrary evidence--is sufficient to find for purposes of summary judgment that outstanding creditors existed in November 1986. Consequently, PaineWebber's first argument for reversal is without merit.
 
 
 18
 II. Were There Other Outstanding Genuine Issues of Fact?
 
 
 19
 PaineWebber argues that the district court also erred in its disposition of the summary judgment motion because several genuine issues of fact existed regarding Craddock-Terry's claim under Virginia Code Sec. 55-81.[3] As noted above, the district court decision primarily turned on the conclusion that Craddock-Terry's $600,000 payment to PaineWebber was without consideration. PaineWebber argues that the district court overlooked genuine issues of fact regarding whether the payment to PaineWebber actually was without consideration.
 
 
 20
 First, PaineWebber argues that evidence tends to show that it provided Craddock-Terry valuable services after the acquisition, providing consideration for the $600,000 payment.[4] Implying that the payment was tendered in exchange for these alleged post-acquisition services, PaineWebber contends that the value of these services remained a genuine issue of fact for trial. For these alleged services to provide consideration for the payment, the parties must have intended the payment to be for such post-acquisition services. The facts, however, establish that they did not. Undisputed evidence displays that both parties intended and understood that Craddock-Terry tendered the $600,000 payment in satisfaction of the debt assumed from HH Holdings in connection with its acquisition of CraddockTerry. The testimony of Riggs and Atayan, as well as the amount of PaineWebber's claim in the bankruptcy, all imply that the payment reduced Craddock-Terry's indebtedness assumed from HH Holdings to PaineWebber to $1 million. This evidence well establishes that the payment was unrelated to any services that PaineWebber may have provided Craddock-Terry after the acquisition. Such services thus could not give rise to consideration for the payment, and their existence could not amount to a factual dispute to defeat summary judgment.
 
 
 21
 Second, PaineWebber argues that the district court erred because material issues of fact exist regarding the indirect benefit that Craddock-Terry received due to PaineWebber's role in precipitating the acquisition by HH Holdings, a benefit that--it asserts--may amount to consideration for the payment. It is undisputed that a debtor may receive valuable consideration indirectly. See Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979, 991 (2d Cir.1981) (instructing lower court to measure "the economic benefit, if any, that accrued to each bankrupt as a result of the third persons's indebtedness"). PaineWebber argues that genuine issues of fact remain regarding whether Craddock-Terry received indirect benefits due to the acquisition; in particular, PaineWebber points to the "benefit" of new management.
 
 
 22
 Few courts have considered whether new management provided a benefit to the target of an acquisition such that consideration was passed for a debt incurred by the target. Those that have considered the issue, however, have rejected the theory. See Credit Managers Ass'n v. Federal Co., 629 F.Supp. 175, 182 (C.D.Cal.1985); United States v. Gleneagles Investment Co., 565 F.Supp. 556, 576 (M.D.Pa.1983), aff'd sub nom., United States v. Tabor Court Realty Co., 803 F.2d 1288 (3rd Cir.1986), cert. denied, 483 U.S. 1005 (1987). Virginia caselaw provides little guidance for determining whether new management should be considered valuable consideration under the statute. It is clear, however, that valuable consideration must be of monetary value. See Credit Managers Ass'n, 629 F.Supp. at 182 (appropriate inquiry is whether the target "received anything of value"); United States v. Gleneagles Investment Co., 565 F.Supp. at 576 (under Pennsylvania enactment of Uniform Fraudulent Conveyance Act drafters "intended consideration to mean only consideration with a monetary value").
 
 
 23
 As PaineWebber suggests, new management may--in some circumstance--amount to consideration of monetary value.[5] Nonetheless, PaineWebber has not demonstrated that Craddock-Terry received any monetary value in its assumption of new management. It fails to indicate evidence submitted on summary judgment that suggests that new management in any manner served Craddock-Terry's pecuniary interest or even that at the time of the acquisition the new management appeared to confer a benefit upon Craddock-Terry.[6] PaineWebber therefore failed--as the district court found--to raise a genuine issue of fact regarding whether the payment was for valuable consideration based on the receipt of new management.
 
 
 24
 In a related vein, PaineWebber argues that Craddock-Terry received a benefit because HH Holdings, which has similar interests as Craddock-Terry, benefitted from PaineWebber's activities. Assuming that HH Holdings did benefit from the acquisition of CraddockTerry, it defies basic tenets of corporate law to impute that benefit to Craddock-Terry simply because it was a subsidiary of HH Holdings. First, the assumed benefits were prior to the acquisition of CraddockTerry by HH Holdings. Consequently, at the time the alleged benefit was conferred on HH Holdings, Craddock-Terry clearly did not bear any identity of interests with HH Holdings. More importantly, it is fundamental corporate law that parent and subsidiary companies are treated as independent entities absent a piercing of the corporate veil. See Johnson v. Flowers Indus., Inc., 814 F.2d 978, 980 (4th Cir.1987).[7] On the summary judgment motion, PaineWebber did not demonstrate in any manner that HH Holdings and Craddock-Terry should be treated as a single entity for purposes of assessing benefits gained or liabilities owed. PaineWebber's argument thus falls short as a reason for defeating summary judgment, and the court below did not err on this basis.
 
 
 25
 PaineWebber finally argues in this regard that evidence displayed that the payment was made in consideration of an antecedent debt owed by Craddock-Terry to PaineWebber. In essence, this argument asserts that the consideration underlying Craddock-Terry's payment to PaineWebber actually passed to Craddock-Terry as part of the exchange in which it assumed HH Holding's debt and that consideration need not pass again at payment. See 11 U.S.C. Sec. 548(d)(2)(A) (defining "value" as a "satisfaction or securing of a present or antecedent debt of the debtor"). Implicitly, PaineWebber also contends that Craddock-Terry cannot dispute the existence of the debt, which appeared on both its financial statements and its statement of liabilities filed with the bankruptcy court.
 
 
 26
 This argument overlooks the gist of the Complaint, which patently alleges that "Craddock-Terry received no benefit for the CraddockTerry Assumption...." In other words, the Complaint directly challenges the validity of the assumption, asserting that no consideration supported the securing of the debt.[8] Securing a third-party's debt does not generally amount to an exchange of reasonably equivalent value unless the debtor received something of that equivalent value. See, e.g., General Elec. Credit Corp. v. Murphy, 895 F.2d 725, 727-28 (11th Cir.1990); Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979, 991 (2d Cir.1981). PaineWebber points to no evidence that with the assumption Craddock-Terry received anything other than debt. Consequently, the district court did not err in concluding that the assumption was absent adequate consideration.
 
 
 27
 Furthermore, Craddock-Terry is not estopped--as PaineWebber implies--from avoiding the transfer and the assumption based on its recognition of a "debt" to PaineWebber. Under Bankruptcy Code Sec. 544(b), Craddock-Terry and its trustee stand in the shoes of a hypothetical judicial lien holder and may sue to strike any fraudulent conveyance that is voidable under applicable law. See Energy Co-Op, Inc. v. Farmers Union Central Exchange, 58 B.R. 132, 135 (N.D.Ill.1984) (citing In re Mortgage America Corp., 714 F.2d 1266, 1274 (5th Cir.1983)). Because Craddock-Terry sues to invalidate the assumption of the HH Holdings liability to PaineWebber from the vantage point of the creditors, it is irrelevant that Craddock-Terry previously recognized and scheduled the debt. See In re Davis, 785 F.2d 926, 927 (11th Cir.1986) (debtors actions do not "forfeit" trustees avoidance action). Such action does not limit the right of the creditors, now represented by Craddock-Terry itself, to seek avoidance of the assumption. PaineWebber's "antecedent debt argument" is thus ultimately unpersuasive.
 
 
 28
 In conclusion, PaineWebber fails to display a genuine issue of fact regarding whether valuable benefits flowed to Craddock-Terry in exchange for its $600,000 payment to PaineWebber. Based on the undisputed evidence, Craddock-Terry received no such benefit. Consequently, the district court did not err in ruling in favor of CraddockTerry on the motion for summary judgment.
 
 
 29
 III. Did PaineWebber Have a Right to Additional Discovery?
 
 
 30
 PaineWebber finally argues that the district court erred by failing to insure that it had adequate discovery to prepare sufficient evidence to oppose summary judgment. In particular, it contends that the district court erroneously denied its motion to compel, which--in its view--aimed to force production of material relevant to the summary judgment. Pursuant to Federal Rule of Civil Procedure 56(f), a trial court should refuse summary judgment "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986). PaineWebber urges this Court to recognize that the district court's failure to grant the motion to compel placed it in just such an unfairly prejudicial situation.
 
 
 31
 PaineWebber suggests that Craddock-Terry has never provided meaningful discovery and that the undiscovered material would have created issues of fact regarding whether PaineWebber provided Craddock-Terry valuable services after the acquisition, regarding the value of PaineWebber's role in the acquisition to Craddock-Terry and regarding whether Craddock-Terry had outstanding creditors in November 1986. As examples of Craddock-Terry's alleged derelict conduct in reference to discovery, PaineWebber cites its repeated invocation of Federal Rule of Civil Procedure 33(c) in response to interrogatories. PaineWebber asserts that this was unfair and contrary to law, particularly because the rule applies only to business records, because the party invoking the privilege must represent that the interrogatory answers can be found in the documents referred to, and because the party invoking the privilege must do so in a manner that aids the interrogating party in finding the particular document that answers a query. PaineWebber argues that Craddock-Terry's alleged failure to meet these burdens undermined its ability to oppose the motion for summary judgment.
 
 
 32
 Although PaineWebber highlights that all too frequent discovery disputes marred efficient development of this case, these discovery issues do not render the decision of the district court granting Craddock-Terry summary judgment as inappropriate. A party requesting additional time for discovery pursuant to Rule 56(f) must satisfy the court that genuine issues may develop with further discovery. A bare assertion to that effect is insufficient. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 251 (2d Cir.1985), cert. denied, 484 U.S. 918 (1987). As Craddock-Terry argues, PaineWebber points to no such issues.
 
 
 33
 PaineWebber contends that the district court's ruling failed to allow it to develop three issues: whether Craddock-Terry received consideration both from PaineWebber's role in the acquisition and from its relationship with Craddock-Terry after the acquisition, and whether other creditors of Craddock-Terry existed in November 1986. Each of these issues have been discussed, supra. To summarize: first, because the $600,000 payment at issue was intended to settle the acquisition fee, PaineWebber's advisory role after the acquisition is irrelevant to whether Craddock-Terry received consideration for the payment. Second, undisputed evidence determined that CraddockTerry received no consideration of monetary value from the acquisition and PaineWebber fails to even suggest in what manner Craddock-Terry may have received a benefit from the transaction. Finally, as discussed supra, the Robinson affidavit and accompanying ledger lay to rest any possibility that PaineWebber could raise a genuine issue of fact regarding whether Craddock-Terry had outstanding creditors in November 1986. For these reasons, it is clear that the district court's implicit finding that further discovery would not have aided PaineWebber in its quest to develop a genuine issue of fact was not erroneous.
 
 
 34
 Furthermore, Craddock-Terry's discovery was sufficiently responsive to avoid delay pursuant to Rule 56(f). Craddock-Terry responded both to document and interrogatory requests. Although CraddockTerry did not produce in hand the thousands of documents requested, it did make them available at a warehouse in Lynchburg, Virginia; it also provided PaineWebber indices of all documents held at Craddock-Terry offices in New York City. These indices noted the date, subject matter and--where possible--author and recipient of thousands of documents. Craddock-Terry also answered PaineWebber's interrogatories, which sought the identity of individuals with particular knowledge. In response, Craddock-Terry both referred PaineWebber to the above-mentioned documents and, in the document response, specifically listed 28 individuals with the knowledge requested. In fact, PaineWebber has deposed all of these individuals. Although Craddock-Terry could have provided more explicit responses, the provision of the documents and the indices essentially answered the interrogatory requests. See 4A Moore's Federal Practice, Para. 26.59 nn. 10-14 ("It is elementary that a party has no right to require his opponent to make compilations of information when documents containing the material necessary for the compilations are available to the first party.").[9] As the court below implicitly concluded, discovery provided a sufficient basis for ruling on the motion for summary judgment.
 
 
 35
 This Court thus concludes that the district court did not err by failing to await further discovery because PaineWebber asserted no reasonably factual expectation that further discovery would have developed a genuine issue of fact. Indeed, and in addition, the parties were each afforded ample discovery.
 
 IV. Attorney's Fees
 
 36
 Finally, Craddock-Terry appeals the district court's denial of attorney's fees pursuant to Virginia Code Sec. 55-82. That section states: "[I]f [a] gift, deed, assignment, transfer or charge be declared void, the court shall allow counsel for the creditors a reasonable attorney's fee to be paid out of the proceeds of the sale as other costs are paid provided the attorney's fee allowed does not affect a prior lien creditor not represented by such attorney." Id. (emphasis added). Craddock-Terry argues that attorney's fees in this instance are appropriate because PaineWebber was actively involved in effectuating the transfer declared void and because PaineWebber is an "insider" of Craddock-Terry. The language of Section 55-82, which creates no exceptions to the general rule, fails to support Craddock-Terry's argument. As the statute makes plain, any attorney's fees awarded pursuant to Section 55-82 are to come from the returned proceeds. In addition, an award of attorney's fees pursuant to that section is inappropriate where, as here, the proceeds of an avoided transaction do not cover the obligations of a debtor to its creditors. The district court thus correctly denied an award of fees.
 
 CONCLUSION
 
 37
 For the foregoing reasons, the Court concludes that the district court in no manner erred, and each issue put forth on appeal is without merit.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 Citing Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 128 (4th Cir.1990), PaineWebber argues that the district court must be vacated for failure to address this issue. In Perini, however, this Court reversed the district court not because the court below failed to address a material issue but rather because the district court incorrectly applied a material legal standard upon which the summary judgment motion at issue turned. The Court remanded for application of the correct standard. That case is inapplicable to the situation at hand
 
 
 [2]
 In contrast to its contention, PaineWebber had more than adequate time and means to contest the implications raised by the Robinson affidavit and accompanying ledger, both of which Craddock-Terry produced in August 1990. PaineWebber had a full 12 weeks to depose any of the creditors listed to discover contravening evidence. PaineWebber did not so choose
 
 
 [3]
 The Court will not in this discussion revisit PaineWebber's contention that a genuine issue of fact existed regarding the existence of creditors in November 1986, as that issue was discussed in the prior section
 
 
 [4]
 PaineWebber states, in answer to an interrogatory, that these services included the review of financial plans, the development of methods for raising financing and the construction of business projections
 
 
 [5]
 Although, perhaps, no circumstance may exist wherein new management would provide valuable consideration to the target of a leveraged buyout, this Court is not willing to foreclose the possibility of such a showing based upon the facts and arguments before it. Refraining to address that argument in no manner affects the outcome of this appeal
 
 
 [6]
 In addition, PaineWebber fails to demonstrate that Craddock-Terry received new management from PaineWebber. In other words, there is no suggestion that PaineWebber owned the new management or that without PaineWebber's aid Craddock-Terry would not otherwise have received new management from HH Holdings. This being the case, PaineWebber has failed to show that it exchanged anything with Craddock-Terry for the payment at issue
 
 
 [7]
 "Under the doctrine of limited liability, a shareholder is not responsible for the acts of a corporation. The concept is expressed by the colorful metaphor of the corporate veil.... Courts will peer behind the corporate veil only if the parent dominates the subsidiary 'to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." Johnson, 814 F.2d at 980-81 (quoting Krivo Indus. Supply Co. v. National Distillers & Chem. Corp., 483 F.2d 1098, 1106 (5th Cir.1973))
 
 
 [8]
 The district court recognized this as the gravamen of the Complaint and clearly addressed the validity of the assumption. Finding a failure of consideration based on undisputed evidence, the district court not only avoided the $600,000 payment as fraudulent, but also avoided the remaining debt as lacking consideration
 
 
 [9]
 In addition, PaineWebber claims that Craddock-Terry failed to provide a corporate deposition regarding pre-bankruptcy matters. PaineWebber, however, undercuts its own argument, having represented that it would accept a sworn statement that the two individuals still a part of the company lack substantive knowledge of pre-bankruptcy matters. The information sought from a corporate deposition thus was not essential to opposition to summary judgment