JCG & Assocs., LLC v. Disaster Am. USA, LLC, 2022 NCBC 44.

STATE OF NORTH CAROLINA

BRUNSWICK COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 746

JCG & ASSOCIATES, LLC; MIP 1, LLC; JAMES BONICA; PATRICIA BONICA; and DAVID L. PETERSON, Trustee of the David L. Peterson Living Trust,

     Plaintiffs and Counterclaim Defendants,

v.

DISASTER AMERICA USA, LLC; DA ROOFING SYSTEMS; ESTATE OF DONALD LEE HUSK, by and through KATHLEEN KAREN HUSK as executrix; and JASON HUSK,

     Defendants and Third-Party Plaintiffs,

and

DISASTER AMERICA OF NORTH CAROLINA, LLC,

     Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff,

v.

TERRY WILLIAMS; and AIRWARE TRANSPORTATION AND LOGISTICS, LLC,

     Third-Party Defendants.

**ORDER AND OPINION
ON MOTION FOR PARTIAL
SUMMARY JUDGMENT**

*Reiss & Nutt, PLLC, by W. Cory Reiss and Kyle J. Nutt, for Plaintiffs JCG & Associates, LLC, MIP 1, LLC, James Bonica, Patricia Bonica, and David L. Peterson, Trustee of the David L. Peterson Living Trust.*

*No counsel appeared for Defendants Disaster America USA, LLC, Disaster America of North Carolina, LLC, DA Roofing Systems, and the Estate of Donald Husk.*

*No counsel appeared for Third-Party Defendants Terry Williams and Airware Transportation and Logistics, LLC.*

Conrad, Judge.

1.      Pending is Plaintiff JCG & Associates, LLC's motion for partial summary judgment against Defendants Disaster America USA, LLC, Disaster America of North Carolina, LLC, DA Roofing Systems, and the Estate of Donald Husk.[1] (ECF No. 131.)  For the following reasons, the Court **DENIES** the motion.

2.      Previous orders describe in detail the nature of the asserted claims and the allegations of the complaint.  *See JCG & Assocs., LLC v. Disaster Am. USA, LLC*, 2021 NCBC LEXIS 109 (N.C. Super. Ct. Dec. 9, 2021); *JCG & Assocs., LLC v. Disaster Am. USA, LLC*, 2019 NCBC LEXIS 112 (N.C. Super. Ct. Dec. 19, 2019).  Thus, the Court provides below only a short summary in lieu of a lengthy background.

3.      In September 2018, Hurricane Florence devastated parts of the North Carolina coast.  After the storm passed, many homeowners in the Village of Bald Head Island engaged Defendants to repair and restore their homes.  By statute, Defendants were required to have a general contractor's license for that work.  *See* N.C.G.S. § 87-1.  But Defendants were not licensed, and they did not disclose that fact to the homeowners.  Instead, Defendants identified "DISASTER AMERICA USA, LLC/JCG & ASSOCIATES, LLC" as the general contractor in each contract.  JCG denies any affiliation with Defendants and alleges that they were using its name and general contractor's license number without permission.  Several homeowners

---

[1] A fifth defendant, Jason Husk, is no longer part of this case.  JCG and the other plaintiffs dismissed all claims against him following the resolution of bankruptcy proceedings under Chapter 7 of the United States Bankruptcy Code.  (*See* ECF No. 141.)

eventually terminated their contracts with Defendants, claiming fraud, overbilling, and shoddy work. (*See, e.g.*, Pls.' Ex. 1, ECF No. 99.2; 30(b)(6) Dep. Disaster Am. USA 190:4–7, ECF No. 99.5; Aff. J. Greene ¶¶ 9–11, ECF No. 99.22.)

4. In this lawsuit, JCG and a group of homeowners have asserted various claims against Defendants. Only JCG's claims are at issue here. It has moved for partial summary judgment on its claims for common-law trademark infringement and unfair or deceptive trade practices under N.C.G.S. § 75-1.1. (ECF No. 131.) Defendants, who are no longer represented by counsel, have not filed any opposition.[2] By rule, the motion is deemed "uncontested." BCR 7.6.

5. Though its motion is uncontested, JCG still has the burden to show that it is entitled to summary judgment. Indeed, when a party seeks summary judgment on its own claims, the burden is higher. The moving party "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985); *see also Kidd v. Early*, 289 N.C. 343, 370 (1976). For that reason, "rarely is it proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984).

---

[2] Defendants' counsel were given leave to withdraw in 2021. Defendants have not retained new counsel or participated meaningfully in the case since that time. The Court notes that corporations and limited liability companies "must be represented by a duly admitted and licensed attorney-at-law and cannot proceed *pro se*" in litigation. *LexisNexis, Div. of Reed Elsevier, Inc. v. TRaviSHan Corp.*, 155 N.C. App. 205, 209 (2002).

6.     Both claims at issue are based on the same underlying facts.  In short, JCG contends that its name (JCG & Associates, LLC) and its general contractor's license number (67490) are valid, unregistered trademarks or tradenames.  It further contends that Defendants intentionally copied the marks and used them to sell remediation and restoration services to homeowners affected by Hurricane Florence.  This conduct, according to JCG, is trademark infringement and a per se violation of section 75-1.1.

7.     Trademark infringement comes in many forms.  One common form is "passing off," which "occurs when a producer misrepresents his own goods or services as someone else's."  *Vitaform, Inc. v. Aeroflow, Inc.*, 2020 NCBC LEXIS 132, at \*40 (N.C. Super. Ct. Nov. 4, 2020) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003)).  That seems to be what JCG is alleging—that Defendants misrepresented their construction services as JCG's—but it does not discuss passing off or frame the issue that way in its supporting brief.  Thus, the Court will not speculate about what is required to prove passing off or whether JCG has done so.

8.     Instead, the Court concludes that JCG's argument fails on its own terms.  JCG contends that it must show "(1) that it has a valid and protectable trademark, and (2) that the defendant has used an identical or similar mark that is likely to cause confusion among consumers."  (Mem. Supp. 6, ECF No. 132 (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)).)  As to the validity of its marks, JCG contends that it must also show that the marks are

inherently distinctive or, if not, that they have acquired secondary meaning. (*See* Mem. Supp. 7 (citing, *e.g.*, *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).) But JCG's attempts to meet these standards fall short.

9. Consider, first, the name "JCG & Associates, LLC." JCG concedes that this name is not inherently distinctive but argues that it has acquired secondary meaning. Ordinarily, secondary meaning is a multi-factor question "for the trier of fact." *Johnson & Morris, PLLC v. Abdelbaky & Boes, PLLC*, 2017 NCBC LEXIS 89, at *21 (N.C. Super. Ct. Sept. 28, 2017) (citation and quotation marks omitted). JCG argues that summary judgment is nevertheless appropriate because it has offered evidence of intentional copying, which gives rise to a presumption of secondary meaning. (*See* Mem. Supp. 8 (citing *Larsen v. Terk Techs. Corp.*, 151 F.3d 140, 148–49 (4th Cir. 1998), and *Osem Food Indus. v. Sherwood Foods, Inc.*, 917 F.2d 161, 163 (4th Cir. 1990)).)

10. This is unpersuasive for two reasons. First, no North Carolina court has held that intentional copying gives rise to such a presumption. The cases that JCG cites come from the Fourth Circuit and reflect the minority view. Most federal courts hold instead that intentional copying is a relevant factor for secondary meaning but is not decisive.[3] JCG has neither acknowledged the split of authority nor explained why North Carolina law should follow the minority rather than the majority view.

---

[3] *See, e.g.*, *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 44 (1st Cir. 2001) ("We also do not find Yankee's evidence of intentional copying probative of secondary meaning."); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992) ("Although imitative intent can help support a finding of secondary meaning, it does not necessarily mandate one." (cleaned up)); *see also Hansen Cold Storage Constr. v. Cold Sys.,*

11.    Second, even if JCG's statement of the law is correct (which the Court need not and does not decide), its evidence of intentional copying is open to interpretation. Among JCG's supporting materials is testimony from one of Disaster America USA's representatives stating that Defendants had permission—or at least believed they had permission—to use JCG's name and license number.  (*See* 30(b)(6) Dep. Disaster Am. USA 120:16–24, 263:8–264:5.)  JCG vigorously disputes this.  But the Court must view the testimony in the light most favorable to Defendants.  Put simply, questions about the controlling law and the content of the evidence preclude entry of summary judgment.

12.    The same is true for JCG's license number.  JCG contends that "67490" is arbitrary and therefore inherently distinctive.  But it is far from clear whether this number is a trademark at all.  "The right to a particular mark grows out of its *use*, not its mere adoption."  *United Drug Co. v. Theodore Rectanus, Co.*, 248 U.S. 90, 97 (1918) (emphasis added).  Put another way, a common-law trademark is "acquired by using the mark in commerce, that is, in connection with the sale of goods or services." *HCW Ret. & Fin. Servs., LLC v. HCW Emple. Benefit Servs., LLC*, 2015 NCBC LEXIS

---

*Inc.*, 2021 U.S. Dist. LEXIS 143438, at *7 (C.D. Cal. May 7, 2021) ("But courts have been hesitant to conclude copying alone—absent any other persuasive evidence—is enough to show secondary meaning."); *Philbrick v. eNom, Inc.*, 593 F. Supp. 2d 352, 369–70 (D.N.H. 2009) (discussing "majority view that intentional copying is simply one of the factors to be considered in evaluating secondary meaning, rather than assigning it any special weight" (cleaned up)); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1560 (S.D. Tex. 1996) ("The majority view is that evidence of intentional copying does not trigger a presumption of secondary meaning.  Rather, such evidence is relevant, but not determinative, of secondary meaning."); *Devan Designs, Inc. v. Palliser Furniture Corp.*, 1992 U.S. Dist. LEXIS 23117, at *30 n.6 (M.D.N.C. Sept. 15, 1992) ("The majority of circuits consider evidence of copying as only one factor in determining secondary meaning.").

73, at *20 (N.C. Super. Ct. July 14, 2015). Missing from JCG's materials is evidence showing that it used "67490" in commerce so that the number took on the characteristics of a trademark rather than merely those of a license number. To obtain summary judgment on its own claims, JCG was required to show that there are "no gaps" in its proof. *Kidd*, 289 N.C. at 370. It hasn't done so.

13. For all these reasons, the Court **DENIES** JCG's motion for partial summary judgment.


**SO ORDERED**, this the 12th day of August, 2022.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases