**WACHOVIA BANK AND TRUST COMPANY, N.A., Plaintiff,**

v.

**CROWN NATION BANCORPORATION, INC., Defendant.**

No. C–C–89–336–MU.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 15, 1993.

Floyd A. Gibson, Bell Seltzer Park & Gibson, Charlotte, NC, for plaintiff.

Dalbert U. Shefte, Shefte, Pinckney & Sawyer, Charlotte, NC, for defendant.

## MEMORANDUM OF OPINION

MULLEN, District Judge.

*Findings of Fact*

1. This is an action for service mark infringement, false designation of origin, and related unfair competition arising under the trademark laws of the United States, 15 U.S.C. § 1051 et seq. and applicable North Carolina trademark and unfair competition laws.

2. The plaintiff, Wachovia Bank and Trust Company, N.A. ("Wachovia") is a national banking association, having its principal place of business in Winston–Salem, North Carolina.

3. The defendant, Crown National Bancorporation, Inc. ("Crown") is a North Carolina corporation having its principal place of business in Charlotte, North Carolina.

4. Wachovia adopted the service mark WACHOVIA CROWN ACCOUNT for banking services and made first use of the mark on September 2, 1987.

5. Subsequently, Wachovia filed an application for U.S. service mark registration for the mark WACHOVIA CROWN ACCOUNT.

6. At no time has Wachovia ever filed an application for U.S. service mark registration for the words CROWN ACCOUNT, except as part of WACHOVIA CROWN ACCOUNT.

7. The date of first use of September 2, 1987 of WACHOVIA CROWN ACCOUNT alleged by Wachovia in its application for U.S. service mark registration was evidenced by a specimen of a newspaper advertisement reading "WACHOVIA CROWN ACCOUNT" with all the words and letters in the same size bold type.

8. The WACHOVIA CROWN ACCOUNT service mark was registered in the United States Patent and Trademark Office (United States Trademark Registration No. 1,522,073) on January 24, 1989, for use in connection with banking services directed to individuals, partnerships, businesses, and corporations.

9. An application for a North Carolina service mark registration was filed by Wachovia for the words "Crown Account", not WACHOVIA CROWN ACCOUNT, claiming the same date of first use of September 2, 1987 as the date alleged in the U.S. application for registration of the mark WACHOVIA CROWN ACCOUNT. The "Crown Ac-

count" mark was registered in North Carolina on November 2, 1987.

10. Wachovia in its complaint alleges that it has used and is the owner of the mark Wachovia CROWN Account. Wachovia has never used the mark WACHOVIA CROWN ACCOUNT in the form of Wachovia CROWN Account.

11. The WACHOVIA CROWN ACCOUNT package of services includes the following:

—Free regular checking or interest/checking;

—Free specially designed checks;

—Special gold Wachovia Banking Card with a $500 daily withdrawal limit;

—Free standard safe deposit box;

—No annual fee MasterCard;

—Free quarterly banking summary;

—No fee American Express travelers checks;

—No fee official checks;

—Free notary services; and

—Free common carrier travel accident insurance.

12. To qualify for a WACHOVIA CROWN ACCOUNT, a person must have: either of the following:

—a Wachovia regular checking account

or

—an Interest/Checking account

AND one of the following:

—Two thousand five hundred dollars ($2,500.00) in a Wachovia Statement Savings Account;

—Ten thousand dollars ($10,000.00) in a Wachovia Cash Investment Account;

—Ten thousand dollars ($10,000.00) in a Wachovia CD or combination of CD's; or

—A fifteen thousand dollar ($15,000.00) Wachovia BankLine or Equity BankLine line of credit.

13. These WACHOVIA CROWN ACCOUNT services reflect a broad spectrum of general consumer banking services. Wachovia has continued to offer this WACHOVIA CROWN ACCOUNT package of services since the inception of the program in September 1987.

14. In addition to these registered marks, Wachovia has also used a design of a crown in rendering its services.

15. Crown National Bank has also used a design of a crown in rendering its services.

16. On December 19, 1987, Crown National Bancorporation, Inc. was formed for the purpose of acting as a bank holding company and, to the extent permitted under federal and state laws, to engage in such business which relates to the operation of a bank holding company and banks.

17. The name "Crown National Bank" was selected by Crown in consultation with and on the recommendation of the Myrick Agency, a Charlotte advertising agency.

18. On November 14, 1988, Crown National Bank filed an application for charter with the Comptroller of the Currency, which application was published for a thirty day comment.

19. On August 17, 1988, R.D. Hughes, an officer of Wachovia, corresponded with James T. Garret, President and Chief Executive Officer of Crown National Bank, congratulating him on his endeavor to open a new bank in Charlotte. On September 22, 1988, Mr. Hughes corresponded with Mr. Garrett, soliciting the establishment of a correspondent relationship between Wachovia and Crown National Bank.

20. Wachovia's first contact with Crown regarding a possible conflict was on April 24, 1989, when Wachovia's attorney telephoned the president of Crown National Bank.

21. In December 1989, Crown opened a bank in the South Park area of Charlotte under the name of Crown National Bank.

22. This lawsuit was filed on August 24, 1989, prior to Crown National Bank's opening for banking services business.

23. Crown National Bank offers a full range of banking services including maintaining checking accounts; providing checks; supplying a banking card; maintaining safe deposit boxes; issuing credit cards, including MasterCard; supplying banking statements,

travelers checks, official checks, and notary services; and other general banking services.

24. Crown National Bank has never referred to any of its accounts as a Crown Account in any advertisements, brochures, banking forms, or other printed materials.

25. Crown National Bank uses the name "Royal Banking" for its premier account of banking services. It has obtained a North Carolina service mark registration for "Royal Banking" for banking services.

26. Crown National Bank uses its name on the sign on the building in which its offices are located, in brochures, advertisements, banking forms, and various other ways.

27. Both Wachovia and Crown utilize brochures, newspaper, and radio advertising in promoting the services used in connection with the marks at issue.

28. In the promotional plan for WACHOVIA CROWN ACCOUNT, the product name used was WACHOVIA CROWN ACCOUNT, not Crown Account.

29. The WACHOVIA CROWN ACCOUNT was introduced to be targeted primarily to customers whose annual household income was $50,000.00 or more, with the secondary target being customers whose annual household income was $35,000.00 or more.

30. The promotional plan sets forth that the target group for WACHOVIA CROWN ACCOUNT tended to shop more for banking services than other customers.

31. Crown National Bank is located in an affluent neighborhood of southeast Charlotte.

32. Crown National Bank targets customers whose annual household income is $50,-000.00 or greater, and small business with annual sales of $10,000,000.00 or less.

33. There are thirty-three businesses listed in the business section of the Charlotte telephone directory whose names begin with the word Crown, including Crown Financial Group.

34. Charlotte, North Carolina, is known as the "Queen City."

35. There is no evidence that the presence of Crown National Bank has affected plaintiff's business in Mecklenburg County because of the name Crown National Bank.

36. The number of WACHOVIA CROWN ACCOUNT customers has increased year by year and there is a larger percentage of the total Wachovia customers in Mecklenburg County that are WACHOVIA CROWN ACCOUNT customers (20%) than the statewide proportion (11%–12%).

37. WACHOVIA CROWN ACCOUNT customers deposit more money in accounts than the average Wachovia customer and, therefore, would likely be more careful in determining the identification and source of the accounts in which they invest. In this regard, over 50% of the dollar volume of deposits of Wachovia personal banking come from the 11%–12% WACHOVIA CROWN ACCOUNT customers.

38. Plaintiff circulated a memo to its twenty-three branch bank managers in the Charlotte area asking for information regarding instances of confusion or misunderstanding. The twenty-three branch banks included sixty-two personal bankers and 350 employees. Only one instance was reported in response to the memo, and this instance was only an inquiry whether there was any relationship between Wachovia and Crown National Bank. There is no evidence that this instance involved confusion.

39. Wachovia personnel corresponded with and contacted the president and chairman of Crown National Bank soliciting business and congratulating on the establishment of the bank, and in no instance did any personnel of Wachovia question or express any concern or even mention the name Crown National Bank as being in any way conflicting with Wachovia's CROWN ACCOUNT.

40. Over four years have passed since Crown National Bank first began publicizing its name and there has been no instance of actual confusion in that time.

41. Almost three years have past since Crown National Bank opened for business and there has been no instance of actual confusion in that time.

42. There is no likelihood of confusion between the use of the mark WACHOVIA CROWN ACCOUNT for banking services and Crown National Bank for banking services.

*Conclusions of Law*

1. This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 in that the claims arise under the trademark laws of the United States. This court has jurisdiction as to the state law claims pursuant to the doctrine of pendant jurisdiction.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391, since the defendant, Crown, is a North Carolina corporation and does business in this district and since the claims stated herein arise in substantial part in this district.

3. The parties have stipulated that the single issue in this case is whether the defendant, Crown National Bank, has used its name in any form or manner that infringes the rights of plaintiff to its service mark WACHOVIA CROWN ACCOUNT and variations thereof.

4. Resolution of this issue is determinative of all claims in this action.

5. Crown National Bank has not used its name in any form or manner that infringes the rights of plaintiff to its service mark WACHOVIA CROWN ACCOUNT and variations thereof.

*Discussion and Analysis*

 The Fourth Circuit has decided two recent cases which list the factors that should be analyzed in determining whether there is a likelihood of confusion. It should be noted that these factors are not like elements of an offense, where each one must be met before the plaintiff has proven its case. Nor is a determination of "likelihood of confusion" based on which party can claim the most factors. Rather, these factors are simply guides to the ultimate question of "likelihood of confusion." Factors will be more or less important dependent on the facts of the case currently under review.

In *Perini Corp. v. Perini Construction, Inc.*, 915 F.2d 121, 16 USPQ2d 1289 (4th Cir.1990), the court, citing *Polaroid Corp. v. Polarad Electronics*, 287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), listed eight factors. These factors are:

1) the strength of the plaintiff's mark;

2) the degree of similarity between the marks;

3) the proximity of the products;

4) the likelihood that the prior owner will bridge the gap;

5) actual confusion;

6) the defendant's intent in adopting the mark;

7) the quality of the defendant's product; and

8) the sophistication of the buyers.

Similarly, in *Pizzeria Uno v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984), seven factors used by the court (relying on *Sun–Fun Products v. Suntan Research & Development*, 656 F.2d 186, 189 (5th Cir.1981)) were:

1) the strength or distinctiveness of the mark;

2) the similarity of the two marks;

3) the similarity of the goods/services the marks identify;

4) the similarity of the facilities the two parties use in their businesses;

5) the similarity of the advertising used by the two parties;

6) the defendant's intent; and

7) actual confusion.

These factors are reviewed in detail below:

1. Strength of Wachovia's Mark

 In analyzing the strength or distinctiveness of service marks, the Fourth Circuit has adopted the analysis of the Second Circuit set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir.1976). *Pizzeria Uno* at 1527. "[T]he courts have classified marks submitted for registration into four groups in ascending order of strength or distinctiveness: 1. generic; 2. descriptive; 3. suggestive; and 4. arbitrary or fanciful." The term "Crown" is suggestive in that it implies some sort of

prestige service, the image both parties are trying to project to their target audience.

However, even a suggestive mark is still considered strong.

[A] suggestive mark "will ordinarily be protected against the use of the same or a confusingly similar mark on the same product, or related products, and even on those which may be considered by some to be unrelated but which the public is likely to assume emanate from the trade mark owner."

*Pizzeria Uno* at 1527 (citing 1 Gibson, *Trademark Protection and Practice*, § 2.01, pp. 2–3 and 2–4 (1984)).

However, Wachovia's product is a package of services under a particular account name. Crown's name is the name of the bank itself. These are not the same product, nor are they related products. Nor has their been convincing evidence to show that the public is likely to assume the products emanated from the same trade mark owner.

2. The Similarity of the Two Marks

 The term "Crown" is identical. However, "Wachovia Crown Account" or "Crown Account" is not similar to "Crown National Bank," nor is it similar to "Crown Financial Group" or "Crown Athletic Club." In short, the use of the term "Crown" in Charlotte, the "Queen City" is a weaker mark than in other locations. However, Wachovia would still be protected if there was a likelihood of confusion among the target group.

3. The Similarity of the Goods/Services the Marks Identify OR the Proximity of Products

While both marks identify various banking services, one mark represents a bank account, while the other mark represents an entire bank.

4. The Likelihood that the Prior Owner Will Bridge the Gap

The likelihood that Wachovia will change its name to Crown National Bank is extremely remote.

5. Actual Confusion

 Wachovia is aware of one instance where a customer asked a Wachovia Personal Banker if the WACHOVIA CROWN AC-COUNT was associated with Crown National Bank. While it is true that actual confusion is not a prerequisite to establish confusion, it is also true that Wachovia attempted to locate additional examples of confusion and could find none. Wachovia's assertion that this example is the tip of an iceberg of actual confusion is unsubstantiated.

6. The Defendant's Intent in Adopting the Mark

There is no evidence that Crown National Bank chose the name "Crown" to take advantage of the advertising and promotion of the CROWN ACCOUNT by Wachovia.

7. The Quality of Defendant's Product

There is no evidence that Crown National Bank's services are of inferior quality, thereby damaging Wachovia's reputation.

8. The Sophistication of the Buyers

 The target customers of both the WACHOVIA CROWN ACCOUNT and Crown National Bank are individuals with household incomes in excess of $50,000 per year. In addition, the WACHOVIA CROWN ACCOUNT also targets households with incomes in excess of $35,000 per year, and Crown National Bank targets small businesses with $10 million or less in sales. Crown National Bank argues that the primary target group, individuals with household incomes in excess of $50,000 per year are likely to shop for financial services, and less likely to be confused than the general public. This court agrees.

9. The Similarity of the Facilities the Two Parties Use in Their Business

Both parties are banks targeting a similar customer base. To that extent, the facilities are similar. There is no evidence that Crown National Bank attempted to copy Wachovia's architectural style or in any way duplicate Wachovia's facilities in an attempt

to take advantage of the reputation Wachovia has established.

10. The Similarity of Advertising Used by the Two Parties

While both banks have advertised on radio, in newspapers, magazines, and by direct mail, there is no evidence that the content of the advertising is similar.

In summary, while some of the factors seem to favor Wachovia, and some favor Crown National Bank, this court rules that there is no likelihood of confusion among the target audience between Crown National Bank and WACHOVIA CROWN ACCOUNT or CROWN ACCOUNT.

The Clerk of Court is directed to certify copies of this memorandum to the attorneys of record.

### JUDGMENT

Pursuant to this court's Memorandum of Opinion filed contemporaneously herewith and the findings and conclusions therein, the court hereby enters judgment as follows:

IT IS ORDERED, ADJUDGED, AND DECREED:

1. That the defendant has not and does not now infringe any service mark of the plaintiff.

2. That the plaintiff have and recover no relief prayed for against the defendant.

3. That the plaintiff's complaint be and the same is dismissed.

The Clerk of Court is directed to certify copies of this judgment to the attorneys of record.