**AUGUSTA NATIONAL, INC., Plaintiff,**

v.

**EXECUTIVE GOLF MANAGEMENT, INC. and The Golf Academy of Hilton Head Island, Inc., d/b/a Junior Masters, Defendants.**

**No. Civ.A. 9–97–1209–08.**

United States District Court,
D. South Carolina,
Beaufort Division.

Feb. 18, 1998.

John P. Linton, Sinkler & Boyd, Charleston, SC, Larry .C. Jones, Alston & Bird, Charlotte, NC, for Plaintiff.

Terry Allan Finger, Finger & Taylor, Hilton Head Island, SC, for Defendants.

## *FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION ORDER*

BLATT, Senior District Judge.

Pursuant to Rules 52(a) and 65(d), Federal Rules of Civil Procedure, the Court enters the following findings of fact and conclusions of law in support of the Preliminary Injunction Order entered in this matter.

### I. *Findings of Fact*

1.  Plaintiff, Augusta National, Inc. ("Augusta National"), is a Georgia corporation having its headquarters and a principal place of business in Augusta, Georgia.

2.  Co–Defendant, Executive Golf Management, Inc., is a New Jersey corporation having its headquarters and a principal place of business in Hilton Head, South Carolina. Co–Defendant, The Golf Academy of Hilton Head Island, Inc., now dissolved, was a South Carolina corporation having its headquarters and a principal place of business in Hilton Head, South Carolina.

3.  Since 1931, Augusta National and its predecessors have owned and operated a golf club having a golf course, and since 1934 Augusta National has been continuously engaged (except during World War II) in organizing, conducting and sponsoring an annual golf tournament, now known as the MASTERS, at the Augusta National Golf Club in Augusta, Georgia.

4.  The golf course and related facilities at the Augusta National Golf Club are of the highest quality. The course is world-famous among the golfing public for its beautiful and well-maintained grounds and facilities, and for the caliber of play that it affords. Likewise, the annual MASTERS tournament held at the Club is renowned for its quality and prestige and is one of the four major tournaments which annually comprise professional golf's "Grand Slam ." Only the most talented professional and amateur golfers in the world are invited to participate in the tournament, as invitation is based on prior achievements in championship play. The annual MASTERS tournament at the Augusta National Golf Club has been attended by many thousands of people in each year during which the tournament has been held since 1934. Badges for attendance at the tournament have been in high demand for many years and remain in high demand to date. Every year, people from around the world travel to the Augusta National Golf Club to attend the

tournament and to view the world-famous golf course located at the Club. As a result, the Club, golf course and golf tournament have become famous throughout the United States and in this country are uniquely associated by the golfing public with Augusta National, Inc.

5. In addition, the MASTERS tournament has been televised on live and delayed broadcasts throughout the United States in each of the last 38 years. The tournament has also been televised, in whole or in part, in many other countries for a number of years. The tournament and its subsequent award ceremony are viewed annually by millions of people.

6. Augusta National, Inc.'s golf club, golf course and tournament are also the subject of substantial media attention, including newspaper, magazine and radio coverage. The annual MASTERS tournament has been the attention of substantial media coverage and interest ever since the event was begun in 1934.

7. Coverage of the annual tournament at the Augusta National Golf Club is also extensively advertised and promoted each year, on a national and international basis, in television, radio and print media for several weeks before the start of the tournament. Additionally, several published books have been directed to the Augusta National Golf Club, course and tournament and have extolled the mystique, character, history and fame associated with the Club, course and tournament.

8. Through such usage and recognition, Augusta National has acquired common-law rights in the distinctive and famous designation "MASTERS" as a proprietary trade name, service mark and trademark, which rights extend, without limitation, to the exclusive right to use "MASTERS" in conjunction with golf-related services and goods.

9. In addition to the common-law rights acquired by Augusta National through the promotion of its services and the sale of merchandise under the designation "MASTERS," Augusta National also has obtained federal registrations for certain members of its family of "MASTERS" marks.[1] Those registrations, each of which is valid and enforceable, include the following:

| Mark | Reg. No. | Reg. Date | Goods/Services |
| --- | --- | --- | --- |
| THE MASTERS | 763,553 | 01/21/64 | Shirts (Int'l Class 25) |
| MASTERS | 1,069,545 | 07/12/77 | Conducting, organizing, promoting and sponsoring golf tournaments (Int'l Class 41) |
| MASTERS | 1,219,958 | 12/14/82 | Playing cards (Int'l Class 16); Umbrellas, ladies' handbags, purses, and traveling bags (Int'l Class 18); Drinking glasses, cups, and pewter mugs (Int'l Class 21); Towels-namely, golf bag towels and beach towels (Int'l Class 24) |
| MASTERS & Design | 1,247,671 | 08/09/83 | Playing cards (Int'l Class 16); Umbrellas, ladies' handbags, purses, garment bags for travel, and identification tags for golf bags (Int'l Class 18); Drinking glasses, cups and pewter mugs (Int'l Class 21) |
| MASTERS | 1,470,536 | 12/29/87 | Prerecorded videotapes related to the game of golf |

1. The fact that Augusta National's federal registrations do not recite the precise golf-related services provided by the Defendants is of no particular significance since, pursuant to the "related goods doctrine" of trademark law, if there is a relationship between the parties' goods or services such that members of the public might think that the defendant's products or services may be connected with, sponsored or approved by the trademark owner, that doctrine points to a finding that confusion is likely and infringement exists. *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245 (4th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970).

| Mark | Reg. No. | Reg. Date | Goods/Services |
|------|----------|-----------|----------------|
| MASTERS TOURNAMENT & Design | 1,480,185 | 03/08/88 | Restaurant services (Int'l Class 42) |

10. There is considerable demand for permission to use the "MASTERS" family of marks and the other proprietary marks that have become uniquely associated among the public with Augusta National, Inc. Each year, Augusta National, Inc. receives requests from around the world for permission to use its proprietary marks, including the designation "MASTERS" and the family of "MASTERS" marks, in connection with a wide variety of services and goods. However, with limited exceptions, it has been the policy of Augusta National, Inc. to refuse requests from others for permission to use its marks in the United States in order to preserve in this country the public's exclusive association of the marks with Augusta National, Inc. and its high quality and unique golf club, golf course, tournament, and products.

11. Over the course of many years, Augusta National, Inc.'s annual tournament has become universally known and referred to, both collectively and separately, by participants, the news media and the golfing public as the "MASTERS." As a result, in this country the designation "MASTERS" has acquired a special and particular significance, and represents very valuable goodwill, as an identification of Augusta National, Inc.'s tournament, so that when golfers, the media and the public in this country see or hear the term "MASTERS," particularly in a golfing context, they automatically think of the Augusta National Golf Club and its tournament. The public's identification of the designation "MASTERS" with Augusta National, Inc. and its annual tournament is evident from the frequent and repeated use of the designation "MASTERS" to refer to Augusta National, Inc.'s tournament in numerous media articles.

12. Defendants are operating a "JUNIOR MASTERS" golf program on Hilton Head Island, South Carolina. Defendants' "JUNIOR MASTERS" program solicits the involvement of high school aged (15–19) young men and women for participation in a golf-centered high school education. Defendants solicit participants from throughout the country and elsewhere, including through advertisements appearing in golf-related publications in this country. At least one of Defendants' advertisements states that its JUNIOR MASTERS program:

> offers a full-time program geared to accomplished Junior Golfers pursuing college level golf and/or a professional career. Extensive golf instruction is combined with a superior academic agenda and housing adjacent to golf courses.

13. Augusta National first learned of the Defendants' JUNIOR MASTERS program in approximately December, 1995, and promptly contacted Defendants and requested Defendants to cease use of Augusta National's "MASTERS" mark. Negotiations over the intervening months were unsuccessful in resolving the issue.

14. Defendants have not been authorized by Augusta National to use its proprietary designation "MASTERS" or any derivative thereof (such as JUNIOR MASTERS), including any such use in connection with golf-related services or goods.

15. The services promoted and advertised by Defendants under the designation "JUNIOR MASTERS" are sufficiently related to Augusta National's the "MASTERS" tournament such that the Defendants' use is likely to cause confusion of the public and to deceive and mislead some members of the public into being interested in and potentially acquiring the Defendants' golf-related services believing that they are services offered under the control, sponsorship or authorization of Augusta National.

16. The Defendants' acts, if not halted, may irreparably damage Augusta National by placing in the hands of the Defendants the good name, reputation and goodwill that have been developed over decades by Augusta National. These acts tend to destroy the otherwise exclusive association in the eyes of the

public between Augusta National and its proprietary designation "MASTERS."

17. Any finding of fact deemed to be a conclusion of law is hereby adopted as such.

## II. *Conclusions of Law*

### *The Four Factors To Be Considered In Determining Whether To Grant A Preliminary Injunction*

In the Fourth Circuit, a "balance-of-hardships" test is used to analyze a request for preliminary injunctive relief. As set forth in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 193–96 (4th Cir.1977), that analysis involves four issues:

(1) The likelihood of irreparable harm to the plaintiff if the injunction is not entered;

(2) The likelihood of harm to the defendant if the injunction is entered;

(3) The plaintiff's likelihood of success on the merits; and

(4) The public interest.

The four issues are not equally weighted. The primary focus of the analysis is the likelihood of irreparable injury to the plaintiff without an injunctive decree balanced against the likelihood of harm to the defendant with an injunctive decree. *United States ex rel. Taxpayers v. Singer Co.*, 889 F.2d 1327, 1331 (4th Cir.1989); *James A. Merritt & Sons v. Marsh*, 791 F.2d 328, 330 (4th Cir.1986).

### A. *The First Factor: Irreparable Harm To The Plaintiff*

■ 1. With regard to the first factor, the irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is enormous, immediate, and presumed in law. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 938–39 (4th Cir.1995) (holding that "irreparable injury regularly follows from trademark infringement"). In *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522 (4th Cir.1984), the Fourth Circuit Court of Appeals quoted with approval and adopted Judge Learned Hand's long-recognized rule that:

If another uses [someone's trademark], he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use....

747 F.2d at 1535, quoting *Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir.1928). To the same effect is *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir.1991), where the appellate court stated "[t]he actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain."

2. One of the harsh realities of trademark infringement is that monetary damages are always inadequate to compensate for a trademark owner's loss of control over the quality of products and services that are marketed under its proprietary mark. Thus, as the law recognizes, this loss of control by Augusta National over its reputation, goodwill and its service mark "MASTERS" inflicts irreparable injury on Augusta National's legitimate proprietary rights, and consideration of the first factor favors entry of a preliminary injunction.

### B. *The Second Factor: Likelihood Of Harm To The Defendant*

■ 3. With regard to the second factor, the Court is to evaluate the likelihood of harm to the Defendants if they are enjoined from using the trade name "JUNIOR MASTERS." The requested injunction will not put the Defendants out of business. In fact, the Defendants are engaged in three distinct types of business. The requested injunction will not have any impact on two of those three types of business and will only require that the Defendants use a different trade name (*e.g.*, "Hilton Head Golf Academy" or "Golf Academy of Hilton Head Island") in conjunction with the relevant third area of their business activities.

4. The three types of business provided by the Defendants include: (1) Historically, the first golf-related business of the Defendants involved organizing and conducting golfing outings for corporate clients. The Defendants are still engaged in such services, but they do not now use, and have not ever

used, the term "JUNIOR MASTERS" in conjunction with those services. Hence, the requested injunction would not harm or even impede the Defendants' conduct of that facet of their businesses. (2) Secondly, the Defendants are engaged in providing instructional golf services to members of the public. In doing so, the Defendants also have refrained from using the trade name "JUNIOR MASTERS," and the requested injunction would not harm or impede the Defendants' conduct of that facet of their businesses. (3) Finally, the requested injunction would not disrupt the Defendants from continuing to provide their combination of academic and golf instructional services. That program would not be interrupted for a single day. The injunction would require, however, that the Defendants not continue to use the term "JUNIOR MASTERS" in conjunction with those services, but that should not prove particularly burdensome since the Defendants are already using and are known by other trade names (*e.g.,* "Golf Academy of Hilton Head Island") to identify this third area of business.

5. Thus, upon considering the circumstances indicating that the businesses of the Defendants will sustain minimal harm if they are enjoined from continuing to use the trade name "JUNIOR MASTERS," the Court believes that this factor also favors entry of the requested preliminary injunction.

### C. *The Third Factor: Plaintiff's Likelihood Of Success On The Merits*

6. With regard to Augusta National's claim for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in part, as follows:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as

to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

7. The test of "likelihood of confusion" turns on whether the use of an imitation of a registered trademark is likely to cause confusion, or to cause mistake, or to deceive. *Lone Star Steakhouse & Saloon v. Alpha of Virginia,* 43 F.3d 922, 933 (4th Cir.1995). Thus, if "any appreciable number of ordinary prudent purchasers" are likely to be confused, mistaken or deceived into believing that the Defendants' "JUNIOR MASTERS" program is somehow sponsored or approved by Augusta National, Section 43(a) of the Lanham Act is violated. *Durox Co. v. Duron Paint Mfg. Co.,* 320 F.2d 882, 884 (4th Cir. 1963). *See also Holiday Inns, Inc. v. Holiday Inn,* 364 F.Supp. 775, 782 (D.S.C.1973).

8. Moreover, in the Fourth Circuit, a likelihood of confusion can be found either: (a) by presumption based upon intentional copying (*Osem Food Industries, Ltd. v. Sherwood Foods, Inc.,* 917 F.2d 161, 165 n. 8 (4th Cir.1990)); or (b) by application of the seven traditional factors found in *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984).

9. The Plaintiff introduced Exhibits 24 and 25 (advertisements created by the Defendants) as evidence showing the Defendants' intent to benefit from the goodwill associated with the term "MASTERS." This Court agrees that the face of the advertisements alone demonstrate some intent to benefit from the goodwill of the trademark name "MASTERS," which may tend to show a likelihood of confusion. However, this Court does not believe that Augusta National should have the benefit of the legal presumption of a likelihood of confusion because the facts in this case are nowhere as egregious as the facts in *Osem Food Industries, Ltd. v.*

*Sherwood Foods, Inc.,* 917 F.2d 161 (4th Cir.1990).

■ 10. Before applying the *Pizzeria Uno* test, it should be noted that the test "factors" are not like elements of an offense, where each element must be met before the plaintiff has proven its case. Nor is a determination of "likelihood of confusion" based upon which party can claim the most factors. Further, not all of the factors are relevant or equally emphasized in each case. Rather, these factors are simply guides to the ultimate question of whether there is likely to be confusion, mistake or deceit as to Augusta National's sponsorship or approval of the "JUNIOR MASTERS" golf program. *Wachovia Bank and Trust Co. v. Crown Nation Bancorp.,* 835 F.Supp. 882, 27 U.S.P.Q.2d 1698, 1701 (W.D.N.C.1993); *Thrifty Rent–A–Car System, Inc. v. Thrifty Auto Sales of Charleston,* 849 F.Supp. 1091, 1093 (D.S.C. 1993).

■ 11. In the absence of a presumption of a likelihood of confusion, the Fourth Circuit suggests that consideration be given to the following factors in determining whether there is a likelihood of confusion, mistake or deceit:

(1) The strength or distinctiveness of the plaintiffs mark;

(2) The similarity of the two marks;

(3) The similarity of the goods/services the marks identify;

(4) The similarity of the facilities the two parties use in their businesses;

(5) The similarity of the advertising used by the two parties;

(6) The defendant's intent; and

(7) Evidence of actual confusion.

*Pizzeria Uno,* 747 F.2d at 1527.

12. Consideration of the first factor shows that this factor is relevant and weighs strongly in Augusta National's favor. The "MASTERS" mark, in the context of golf, is one of the strongest, if not the very strongest, golf-related mark in existence in this country. The fame, notoriety, and excellent reputation associated with the "MASTERS" mark cannot be seriously challenged, and the Defendants do not challenge it.

13. The second *Pizzeria Uno* factor is also relevant and weighs strongly in Augusta National's favor. The two marks at issue, "MASTERS" and "JUNIOR MASTERS," are strikingly similar. The most prominent portion of the Defendants' mark/trade name is "MASTERS." The "JUNIOR" element of the Defendants' mark/trade name simply connotes a youth-related program or service. Hence, consideration of the similarity of the two marks at issue points toward a finding that confusion as to sponsorship or approval is likely.

14. The third *Pizzeria Uno* factor is the similarity of the goods/services identified by the marks. If there is a relationship such that members of the public might think that the defendant's products or services may be connected with, sponsored or approved by the trademark owner, the "related goods doctrine" points to a finding that confusion is likely and infringement exists. *See Communications Satellite Corp. v. Comcet, Inc.,* 429 F.2d 1245 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970). In this case, both parties provide golf-related services under their respective marks. In view of the related goods doctrine of trademark law, the fact that both parties provide golf-related services under their respective marks favors a finding that confusion is likely.

15. The fourth *Pizzeria Uno* factor, the similarity of the parties' facilities, is not relevant in this particular case.

16. The fifth *Pizzeria Uno* factor looks to the similarity of the advertising used by the two parties. The Defendants advertise their "JUNIOR MASTERS" program in various publications directed principally to persons who are interested in the game of golf and its major tournaments. Augusta National's MASTERS tournament, of course, is often the subject of articles appearing in those publications; hence, to the extent, if any, that this factor is relevant in this case, it weighs in Augusta National's favor.

17. As has already been noted, there is some indication that the Defendants, in adopting the trade name JUNIOR MASTERS, may have intended to benefit from the excellent reputation and goodwill which

had been created by Augusta National in the term MASTERS in the context of golf. Under the *Pizzeria Uno* analysis, consideration of that intent also weighs in Augusta National's favor.

18. The final *Pizzeria Uno* factor is evidence of actual confusion. Here, the Court does not find any evidence of it; thus, this factor weighs in the Defendants' favor. However, the weight to be accorded this factor is relatively minimal in view of the difficulty in developing such evidence. *Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.*, 281 F.2d 755, 761 (2nd Cir.1960) ("Actual confusion or deception of purchasers is not essential to a finding of trademark infringement or unfair competition, it being recognized that reliable evidence of actual instances of confusion is practically almost impossible to secure."); *Wendy's Int'l, Inc. v. Big Bite, Inc.*, 576 F.Supp. 816, 822 (S.D.Ohio 1983). Thus, at this preliminary injunction stage, a consideration of the *Pizzeria Uno* factors leads to the conclusion that an appreciable number of ordinary prudent members of the public are likely to be confused, mistaken or deceived into believing that the Defendants' "JUNIOR MASTERS" program is somehow sponsored or approved by Augusta National. Hence, Augusta National is likely to succeed on its Lanham Act Section 43(a) infringement claim.[2]

### D. *The Fourth Factor: The Public Interest*

19. Returning to the Fourth Circuit's four-prong standard for analyzing a request for preliminary injunctive relief, the fourth factor is the public interest. The right of the public to be free from the deception that results from a defendant's use of a plaintiffs trademark is transcendent. *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir.), *cert. denied,* 340 U.S. 896, 71 S.Ct. 239, 95 L.Ed. 650 (1950). Members of the public have a strong interest in not being deceptively "attracted" to the Defendants' golf program by the unauthorized use of a mark or trade name that is well known to them; thus, the public interest factor weighs in Augusta National's favor.

---

2. This Court's findings of fact and conclusions of law set forth herein, which provide that a likelihood of confusion does exist, are based on the evidence presented at this stage in the litigation,

20. Any conclusion of law deemed to be a finding of fact is hereby adopted as such.

### III. *Summary Of Findings And Conclusions*

1. The Defendants are advertising, promoting and providing golf-related services in commerce under the trade name/mark "JUNIOR MASTERS," which trade name/mark may be an unauthorized derivative of Augusta National's proprietary and federally registered designation, "MASTERS" and may constitute infringement of the common law rights of Augusta National in its mark "MASTERS." The Plaintiff, at this stage in the litigation, has made a sufficient showing that the Defendants' actions are likely to confuse, mislead and/or deceive members of the public as to the sponsorship or approval of the Defendants' golf-related services.

2. The Defendants' conduct may cause, if not enjoined, irreparable damage to the rights of Augusta National, to the distinctive quality of its proprietary designation "MASTERS," and its business reputation and goodwill.

3. Augusta National is entitled to preliminary injunctive relief, and a written preliminary injunction order shall be entered by this Court on this same date.

---

and will not prejudice the Defendants' right to present further evidence on the issue at trial on the merits.